Bosworth and another, Appellants, vs. Tallman and others, Respondents.

*March 19 — April 6, 1886.*

*Reversal of judgment: Immaterial error: Logs and timber.*

A judgment will not be reversed for an error (in this case an erroneous assumption as to one boundary line of lands from which timber was alleged to have been wrongfully cut), unless it is made to appear that such error was prejudicial to the appellant.

APPEAL from the Circuit Court for *Lincoln* County.

The case is thus stated by Mr. Justice CASSODAY:

"This action is to recover 267,000 feet of pine saw-logs described, or their value, claimed to have been wrongfully taken from the S. E. ¼ of the S. W. ¼ of section 5, township 40, range 10 east, and unlawfully and wrongfully detained by the defendants. The answer, in effect, denies the wrongful or unlawful taking or detention, and admits the possession of the logs described, and claims them by virtue of a purchase, in good faith, under a contract from Dayton & Baldwin, who rightfully took them, as claimed by the defendants, from lands belonging to themselves, other and different from those above described, including lands in said section 5 immediately north and east of said land of the plaintiffs, the same being described as the N. E. ¼ of the S. W. ¼ of said section 5, and lot No. 7 in said section 5.

"The court submitted to the jury twenty questions, in the form of a special verdict, the answers to six of which were written by consent and agreement of the parties, to the effect: (1) The actual length of the east line of said section is 165 rods and 3 links. (2) The actual length of the west side of said section is 180 rods and 21 links. (3, 4) The actual length of the north and south lines, respectively, of said section is 320 rods. (5) There are monuments or bearing trees, or other evidences, showing the location or existence of the N. W., S. W., and S. E. corners of said section. (7) No quarter-section corner was ever established or located by the government survey on the east side, south side, or north side of said section.

"With the exception of the thirteenth question, which was stricken out, and not answered, the jury answered the other questions to the effect (6) that the correct N. E. corner of said section was as established by the witness George Sturdevant; (8) that a quarter-section corner was established or located by the government survey on the west

side of said section, (9) at the distance of 21 rods from the N. W. section corner, and 160 rods from the S. W. section corner; (10) that the north line of said section is traced or traceable by blazes, or other marks of government survey; (11) that the S. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of said section was owned by the plaintiffs, and timber was cut therefrom by Dayton & Baldwin in the winter of 1883–84, and by them sold to the defendants; (12) but the defendants did not have notice at the time they purchased the logs in controversy that the same, or any portion thereof, were cut off from the lands of the plaintiffs; (14) that, assuming that the true measurements would establish the north and south quarter-posts equidistant from the N. E. and N. W., and S. E. and S. W. section corners, and the east and west quarter-posts a proportional or *pro rata* distance between the N. E. and S. E., and the N. W. and S. W. section corners, so that the north line of the plaintiffs' land should be located about 45 rods north of the south line of the section, then Dayton & Baldwin cut 60,000 feet of timber from the plaintiffs' land in the winter of 1883–84, and sold the same to the defendants; (15) but assuming the survey by the witness George Sturdevant to be correct, then Dayton & Baldwin cut from the plaintiffs' land during that winter, and sold to the defendants, 261,000 feet; (16) and assuming the survey by the witness Allen to be correct, then Dayton & Baldwin cut from the plaintiffs' land during that winter, and sold to the defendants, 253,000 feet; (17) that the stumpage value of the timber cut from the plaintiffs' land that winter was $4.50 per thousand feet; (18) that the plaintiffs were the owners, and entitled to the possession, of the logs described in the complaint, to the amount of 257,000 feet; (19) and the defendants did and do unjustly detain the same from the plaintiffs; (20) and the plaintiffs have sustained damages by such unjust detention to the amount of six cents.

    " The plaintiffs moved the court for judgment on said

verdict for the said value of said 257,000 feet at $4.50 per thousand feet, as found by the jury, and interest thereon from June 1, 1884; and at the same time the defendants moved to set aside the verdict and for a new trial. Whereupon the court denied the motion to set aside the verdict and for a new trial, and adjudged that the plaintiffs recover of the defendants the possession of said 60,000 feet found by the jury, or $270, the value thereof as found by the jury, and $18 interest thereon, in case delivery of said property cannot be had; and that the plaintiffs recover six cents damages, together with $198.70 costs, amounting in the whole to $486.76. From so much of said judgment as awards damages to the plaintiffs only in the sum of $288, the plaintiffs appeal."

For the appellants the cause was submitted on the brief of *G. W. Cate.*

For the respondents there was a brief by *Reed & Lines,* and oral argument by *Mr. Reed.*

Cassoday, J. We have had some difficulty in ascertaining the facts as claimed by the respective parties in this case. Only a small portion of the evidence is printed. We regret that the learned counsel for the plaintiffs was detained from orally arguing the case. The only error assigned is that the court denied the plaintiffs' motion for judgment for the value of the 257,000 feet mentioned in the special verdict, and only granted judgment for the value of the 60,000 feet found in the verdict. The judgment for the 60,000 feet is based upon the correctness of the assumption or proviso contained in the fourteenth finding as above stated. That is claimed to be an error. For the purposes of this case we shall assume that it was. The question recurs whether it was such an error as was prejudicial to the plaintiffs. Unless it affected their substantial rights, it should not work a reversal. Such is the mandate of the statute. Sec. 2829,

R. S. Errors are not to be presumed, even when assumed. It was incumbent upon the appellants, not only to point out any alleged error, but to make it appear that they were thereby aggrieved. Such is the settled practice of this court. The plaintiffs' right to judgment for the amount claimed is based upon the assumed accuracy of Sturdevant's survey and Allen's survey. The jury assumed the accuracy of each of those surveys in making the fifteenth, sixteenth, and eighteenth findings, and took the average amount cut as determined by both. By both of those surveys the north line of the section was 397 rods and 3 links in length, while the south line was only 320 rods in length. By Sturdevant's survey the east line of the section ran straight in nearly a northeasterly and southwesterly direction, and was 187 rods and 5 links in length. By Allen's survey it ran from the southeast corner of the plaintiffs' land, slightly to the northeast, for a distance of 128 rods, and then angled sharply to the northeast, making the whole angling line on that side 206 rods. But these assumptions are in direct conflict with the first, third, and fourth findings, which, as appears from the record, were agreed to by the parties on the trial, and the answers written in accordingly. According to those findings the north and south sides of the section were each of the same length,— 320 rods,— and the east line 165 rods and 3 links. All agree that the west line of the section ran substantially north and south, and was 180 rods and 21 links in length; and also as to the location of the northwest, southwest, and southeast corners; and that the south line of the section ran substantially east and west. The jury did not find the length of the different sides of the section according to the survey of either Sturdevant or Allen; but each testified to his own survey, and their correctness, respectively, was assumed by the jury as stated; and yet, by each of such surveys, the north side of the section was 77 rods and 3 links longer than stated in the

findings by the agreement of the parties, while the east line of the section, by each of said surveys, was more than 22 rods longer than stated in the findings by the agreement of the parties, besides angling greatly to the northeast, as indicated.

The assumption in the fourteenth finding that the north and south quarter-posts should be established equidistant from the northeast and northwest, and the southeast and southwest, section corners was undoubtedly correct. The error assumed in that finding, if any, consists in establishing the east and west quarter-posts equidistant between the northeast and southeast, and northwest and southwest, section corners, instead of making the south half of the section full, and putting the deficiency wholly in the north half of the section, as claimed by the learned counsel for the plaintiffs. In other words, the error claimed is that that finding is upon the assumption that the plaintiffs' lands did not extend as far north as they in fact extended. But the difficulty grows out of the fact that Dayton & Baldwin owned the lands adjoining the plaintiffs' on the east as well as on the north, and cut timber on the same during that winter, according to Sturdevant's survey; and according to Allen's survey the east line of the plaintiffs' land ran from their southeast corner in an angle, far more to the eastward than the east line as found by the agreement of the parties. In other words, the amount and value of the timber found in the fifteenth, sixteenth, and eighteenth findings were upon the assumption that the plaintiffs' land extended much further east than it in fact did, as appears from the findings agreed upon. That is to say, the fifteenth, sixteenth, and eighteenth findings were based upon the false assumption that the plaintiffs owned a large triangular piece of land, which, as appears from the agreed findings and the admitted facts, belonged to Dayton & Baldwin. From the record before us we cannot say but what all the timber men-

tioned in the fifteenth, sixteenth, and eighteenth findings, in excess of what the plaintiffs have recovered in the judgment, was in fact cut from such triangular piece so belonging to Dayton & Baldwin. If any portion of it was not so cut on such triangular piece, but was cut on the plaintiffs' land, as assumed in those findings, then the plaintiffs should have made it to appear in the record. In the absence of such showing we must assume that such excess was cut on the lands of Dayton & Baldwin, notwithstanding the eighteenth finding that the logs described in the complaint belonged to the plaintiffs. That finding clearly was based upon the same false assumption contained in the fifteenth and sixteenth findings.

*By the Court.*— That part of the judgment of the circuit court appealed from is affirmed.