Kreuziger vs. The Chicago & Northwestern R. Co.

KREUZIGER, Respondent, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*November 17 — December 4, 1888.*

PRACTICE: EVIDENCE. *(1) Medical books: Waiver of objection: Reversal of judgment. (2) Personal injuries: Condition of plaintiff's family. (3) Opinion of expert based on conflicting evidence. (4) Negligence: Proximate cause: Special verdict.*

1. Evidence as to the statements of medical books or authors is inadmissible, but its admission may not work a reversal where both parties introduced and had the benefit of it and the question of its competency was not raised in the trial court by proper and specific objections.

2. In an action to recover for personal injuries, evidence that the plaintiff has a child of tender years is inadmissible.

3. An expert witness should not be permitted to give an opinion based upon contradictory testimony of other witnesses.

4. In an action to recover for personal injuries, it being a disputed question whether the injuries were the proximate result of the negligence complained of or of some independent and intervening cause for which the defendant was not responsible, it was error to refuse to submit that question to the jury for a special finding.

APPEAL from the County Court of *Dodge* County.

Action to recover damages for injuries to the person of the plaintiff, alleged to have been caused by the wrongful acts and negligence of the defendant's servants. The facts will sufficiently appear from the opinion. There was a special verdict finding the facts in favor of the plaintiff and assessing her damages at $1,700. From the judgment entered thereon the defendant appeals.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* of counsel, and oral argument by *C. H. Van Alstine.*

*E. P. Smith* and *J. E. Malone,* for the respondent.

ORTON, J. The facts of this case are mainly the same as in the previous case of *Stutz v. C. & N. W. R. Co., ante,*

p. 147, and they will be more fully stated in that case, and the errors assigned which are common to both cases will be there considered. The facts are in short as follows: The plaintiff and a lady friend, Mrs. Stutz, entered the caboose of one of the company's freight trains, at Juneau, in this state, to ride to Minnesota Junction, about three miles north. The train stopped a considerable distance south of the depot at the junction, and they were informed by the conductor that they must get out. At that place there was a side track extending north to a point opposite the depot, and under it, at the highway on which the plaintiff lived and to which she must go to reach her home, was a culvert or cattle-guard, with open spaces between the ties. The plaintiff and her friend, who were the only passengers, got out of the caboose as ordered, and walked north on the side track with the intention of reaching the highway and proceeding to their homes thereon. About the time they started the side track was unoccupied, and a part of the train was uncoupled and proceeded north, past the station, and then backed down south on the side track towards them as they were so walking thereon, but stopped 300 feet north of the culvert. The plaintiff and her friend, however, discovered that the cars were approaching towards them, and walked fast, so as to reach the highway in advance of them, and while so walking they both fell into the culvert, which was not observed in the dark. They were both much injured, and the plaintiff suffered epileptic fits as the result of the fright caused by the apprehension of the cars coming upon them before they could get out.

1. It is assigned as error that Dr. Halleck, as a medical witness for the plaintiff, was asked: "Do not all the authors, so far as you have read, and those of standing in the profession, lay it down among other causes of epilepsy, lay down fright and mental excitement as predisposing causes of epilepsy?" This was objected to on the ground of its

being leading and incompetent, by the counsel for the defendant, and said objection was overruled by the court, and exception taken. Dr. Shimonick, another witness for the plaintiff, was asked, "What are the causes of epilepsy?" and he answered: "Well, there are a great many causes. Among the great many causes laid down by the authors, is mental shock, excitement, mental overwork, fright, terror, shocks of all descriptions." The defendant's counsel moved to strike out that answer, and the motion was denied, and exception taken. The witness was then asked: "Now, will you give me the names, doctor, of some of the professional authors who treat on this subject of epilepsy, recognized by the profession, with which you are acquainted?" To this question the defendant's counsel objected generally, and the objection was overruled, and exception taken, and the witness answered: "Hamilton is one of the recognized authors in this country, Naegel of Germany, and Hammond of New York." The witness was then asked: "These authors that you have mentioned,— what do they say with regard to this disease being produced 'by fright or terror or shock?" The witness answered: "They place mental excitement from grief or agony or terror as one of the causes of epilepsy."

These questions and answers relating to medical books and authors were clearly improper, and the ruling erroneous. *Stilling v. Thorp*, 54 Wis. 528; *Boyle v. State*, 57 Wis. 472; *Soquet v. State*, 72 Wis. 659. There was very much of this kind of testimony of these and other medical witnesses admitted after general objection. But we are disposed to hold that this error, so often repeated, is not sufficient ground for reversal of the judgment, for two reasons: (1) The objection to this evidence was waived by the defendant, by having first introduced it, and by having had the benefit of the same kind of evidence, obtained on cross-examination of the plaintiff's witnesses. (2) The attention

of the court, or of the opposite counsel, does not seem to have been called to this particular ground of its incompetency. On the first cross-examination of the first medical witness, Dr. Halleck, the counsel of the appellant called out the testimony that "he had to go a good deal by *authorities;* the *books* claim that it will;" and again, "I think some *authorities* claim that about forty per cent. of patients utter a cry." The learned counsel asked: "Tell me what books you are speaking of. *Let us have the authorities.*" The instances are numerous where this kind of testimony was obtained by the defendant without objection, before the question was raised, if raised at all, by objection. The counsel of the plaintiff first introduced this kind of evidence without objection, such as "I think the authorities give hereditary causes oftener than any other." "Authors claim as a rule," etc. Then, after such cross-examination, when the witness is being re-examined by the plaintiff's counsel, the counsel of the defendant made his first and only objection as to its *competency;* and that was clearly proper, for it was cross-examination as to matter called out by the defendant. In all other instances, the objection was only general. When Dr. Senn, a witness of the defendant, was cross-examined, he testified: "It would be an exciting cause, and as such it would be enumerated in the *books;*" and yet this was not objected to. When he was examined in chief he testified that "he had made no special study of epilepsy," but said: "I think that *modern science* recognizes two distinct causes." This would seem to be sufficient to justify holding that the defendant waived all objection to this kind of testimony. The principal part of the medical evidence to this real point in controversy, on both sides, appears to have been obtained from the *books* and *authorities.* It would be invidious and unfair to hold that the plaintiff's part of this common error ought to reverse her judgment. The only time, as we have seen, that the

objection was made on the ground of *incompetency*, was when the evidence was strictly proper on cross-examination. The error is such a bold and flagrant one, by very late decisions of this court, it would seem as if the court would not have allowed it, and the plaintiff's counsel would not have asked or permitted it, if their attention had been called to the very point of *medical books,* or it might have been understood that objection to it had been waived by the defendant. The probability is now, since special attention is called to it, that this error will not occur again in this case.

2. The plaintiff, as a witness, was asked by her counsel, " Have you a family?" and she answered: "One living, and one dead." "How old is the child that you now have living?" and she answered: "He is seven years, will be eight in July." Exception was taken by the defendant's counsel to overruling objection to these questions. This was error. Upon the question of damages for the negligent killing or injuring a child, evidence as to the family and condition of its parents is admissible. *Johnson v. C. & N. W. R. Co.* 64 Wis. 425. From the admission of such evidence in this case, it might very naturally occur to the jury that the plaintiff would be entitled to greater damages on account of the support and dependence of her child. But in such a case the admission of such evidence was highly improper, and we cannot say that it did not affect the amount of the verdict. *Pennsylvania Co. v. Roy,* 102 U. S. 451; *Chicago v. O'Brennan,* 65 Ill. 160; *Pittsburg, Ft. W. & C. R. Co. v. Powers,* 74 Ill. 343.

3. Dr. Halleck testified that he heard the testimony of the plaintiff, *and the other evidence in the case,* and he was then asked by the plaintiff's counsel: "From *said evidence,* and that of the plaintiff, and your examination of her as her physician, were the subsequent attacks of the same nature as the attack described by the plaintiff?" and he an-

swered: "Yes, sir." Dr. Shimonick testified that "he made examination of the plaintiff ten days or two weeks ago, and heard the witnesses [evidence] relative to her condition after the accident, which was given yesterday, and of Dr. Halleck." He was asked: "From that evidence and that knowledge, and your own personal examination, what in your opinion was the difficulty which followed the accident?" and he answered: "Epilepsy, I think." He was asked: "From the testimony upon this subject given in the case, in your opinion, is there reasonable cause for believing that she will not recover from this disorder?" These questions were all severally objected to by the defendant's counsel, and the objection overruled, and exception taken. On cross-examination, Dr. Shimonick testified that he examined the plaintiff about ten days or two weeks ago (about one year and a half after the accident); that he questioned her with regard to her condition; that he understood the trial was to take place; that he made *no personal examination* of her, so when he speaks of certain opinions resulting from the examination he is speaking simply from what she tells him and what her mother told him. The defendant's counsel thereupon moved that the above testimony given by Dr. Shimonick be stricken out. The motion was denied, and exception taken.

The above questions and testimony were clearly improper. The other evidence besides that of the plaintiff, upon which an opinion was asked, was in relation to her symptoms and appearance at different times, testified to by several different witnesses, in which they did not agree in all particulars. This was sufficient as to the opinion asked of Dr. Halleck. And as to the questions put to Dr. Shimonick, and his evidence which the court was asked to strike out, they were not only based upon the testimony of other witnesses which was to some extent contradictory, but upon what the plaintiff and her mother told him one year and a

half after the accident. Such testimony is grossly incompetent and unsafe by all authorities and by common reason. It is singular that in such a case the only proper method of examination by hypothetical questions was most studiously avoided. These several rulings were erroneous. *Bennett v. State*, 57 Wis. 81; *Quinn v. Higgins*, 63 Wis. 669; *Gates v. Fleischer*, 67 Wis. 508; *Heald v. Thing*, 45 Me. 392.

4. The defendant's counsel asked the court to submit to the jury, as a special finding, the following question: "Did the plaintiff fall into the cattle-guard in and during an attempt to extricate Mrs. Stutz therefrom?" The court refused, and exception was taken. We think the court erred by such refusal. There was some evidence tending to show that the plaintiff fell into the cattle-guard by trying to help Mrs. Stutz out of it. Mrs. Stutz testified that, as she took a scream, the plaintiff tried to help, and then she tumbled in. W. H. Askew testified that the plaintiff told him that "Mrs. Stutz slipped into the culvert, and that she assisted her to get out; that she slipped down in doing so, and bruised her side slightly." This evidence makes a disputed or litigated question of the manner in which the plaintiff fell into the culvert, and whether the plaintiff fell in and received her injury as the direct and proximate result of the negligence complained of, or of some independent and intervening cause for which the company was not responsible. *Lewis v. F. & P. M. R. Co.* 54 Mich. 55. It is true the plaintiff denied that she ever said so to the witness Askew; and Mrs. Stutz testified afterwards that she did not know how the plaintiff fell into the cattle-guard, but still there was evidence enough to make a disputed fact, and a very important one.

For these errors the judgment will have to be reversed, and a new trial had.

*By the Court.*— The judgment of the county court is reversed, and the cause remanded for a new trial.