ABBOT and another, Plaintiffs in error, vs. HEATH, Defendant in error.

*February 1 — February 21, 1893.*

*Expert testimony: Citation of authorities.*

1. A physician who examined the plaintiff in an action to recover for personal injuries, not for the purpose of treating him, but for the sole purpose of testifying as an expert in his behalf, cannot testify to the statements made by plaintiff as to his symptoms and condition, nor give an opinion based on such statements.

2. The decision by this court of a material and important question of law will not be affected by the fact that a previous decision in point was not cited on the argument in the trial court.

ERROR to the Circuit Court for *St. Croix* County. The facts are sufficiently stated in the opinion.

For the plaintiffs in error there was a brief by *Howard Morris* and *Thos. H. Gill*, and oral argument by *Mr. Gill*. To the point that it was error to admit the testimony of plaintiff's medical experts in so far as it was based upon subjective symptoms, they cited, besides cases cited in the opinion, *Ill. Cent. R. Co. v. Sutton*, 42 Ill. 441; *Chapin v. Marlborough*, 9 Gray, 244; *Roosa v. Boston L. Co.* 132 Mass. 439; *Grand Rapids & I. R. Co. v. Huntley*, 38 Mich. 543; *Heald v. Thing*, 45 Me. 392.

For the defendant in error there was a brief by *Fethers, Jeffris & Fifield*, of counsel, and oral argument by *O. H.*

*Fethers* and *M. G. Jeffris*.  They contended, *inter alia*, that
the testimony of a physician based upon subjective symp-
toms is admissible.  The basis of his opinion may be shown
by direct or cross-examination, and considered by the jury
in determining the weight of his testimony, but the opin-
ion is not thereby rendered incompetent.  *Quaife v. C. &
N. W. R. Co.* 48 Wis. 525; *Barber v. Merriam*, 11 Allen,
324; *Louisville, N. A. & C. R. Co. v. Falvey*, 104 Ind. 409–
419; *Ill. Cent. R. Co. v. Sutton*, 42 Ill. 438–9.

ORTON, J.  This action was brought by the plaintiff,
*Horace Heath*, against the defendants, *E. H. Abbot* and
*J. H. Stewart*, trustees operating the Wisconsin Central
Railroad, to recover damages for his personal injuries re-
ceived at a railroad crossing in the village of Spencer in
February, 1887.  The plaintiff was driving a team of two
pairs of mules, hitched to a sled heavily loaded with timber
and lumber, into the village of Spencer and on Clark street
where it crosses said railroad.  His team was nearly or quite
over the crossing before he saw the approaching train, and
then he jumped off his load, but was struck by the engine,
and injured.  The first trial of the case took place in June,
1890, and the last trial in December, 1891.  The plaintiff
was treated for his injuries at the time by one Dr. Adams
about twenty-three days, and was assisted by Dr. Wyatt.
The jury found a special verdict that the train was run at
a dangerous rate of speed, and that the defendants' em-
ployees were not keeping a proper lookout as the train ap-
proached the crossing, and that they were the causes of the
accident, and that the plaintiff's damages were $4,500.

On the trial one Dr. W. D. Lyman was sworn on behalf
of the plaintiff as an expert medical witness, who testified
that he examined the plaintiff twice after the action was
brought and before the first trial, and twice afterwards
and before the last trial, and that he found him suffering

from dizziness a great deal.  The witness then asked if he should give the objective and subjective symptoms, and explained that by "subjective symptoms" he meant symptoms that are related by the patient, that cannot be observed by the physician but are learned by questioning the patient.  The defendants' counsel thereupon objected to any testimony by the witness detailing *subjective* symptoms. The objection was overruled, and the defendants excepted. There was no physician or other person present at his examinations of the plaintiff who represented the defendants; and the witness made such examinations for the sole purpose of testifying on the trial as a medical expert on behalf of the plaintiff, and not for the purpose of treating him as a patient.  His further testimony, to a certain extent, was as follows: He found him suffering a great deal from dizziness.  Was unable to read or use his eyesight constantly without occasioning dizziness and a tired feeling at the head.  Was unable to move his left limb as far back as the right, and other motions and voluntary rotations of the limb were impaired.  The left arm was the stronger.  The patient described creeping and prickly sensations in the left leg, and sensations of heat and cold, and that it frequently went to sleep.  These are the evidences of an injury to the nerve centers or nerve trunks, and the natural tendency of these symptoms is to increase, and paralysis may or may not follow.  The injuries are of a permanent character.  If the plaintiff was struck by a train, and injured in the region of the back, as described, and thrown some forty to sixty feet, that injury would fully account for all the conditions described.  He made up his mind that the plaintiff has the troubles mentioned, wholly from what he has told him in regard to the symptoms, and the medical knowledge he acquired from reading and practice, and none of it in the treatment of the patient as a physician.  The plaintiff, at the examinations, told him how the accident occurred, and

in making up his judgment the violence of the injury always enters into the case, and did here. When he made his first examination, he did not know that the plaintiff had been on the stand as a witness. In determining all these results he took into consideration what the plaintiff told him.·

When Dr. S. H. Esch was sworn as a medical witness for the plaintiff, the question was again raised as to the competency of his testimony of *subjective* symptoms, and the same ruling and exceptions were repeated. Dr. Esch testified that "subjective symptoms are what we ask the patient." He was asked by the counsel of the plaintiff what he discovered from the subjective symptoms,— that is, what his condition is. His testimony was in answer to this question, and he said: "He complained of cramps, coldness, and heat, and at various times sensations of creeping, crawling, and numbness; headaches, inability to stand exercise or walking any length of time without getting tired. From his condition I do not think he is able to perform a full day's work, nor do I think his condition will be any better than it is now. The probabilities are that the symptoms will increase, and there may possibly eventually be paralysis. The numbness and cold feeling in his right arm show a tendency to a derangement of the nerve centers that supply the arm."

The counsel of the defendants then moved to strike out the testimony of these subjective symptoms, or what the plaintiff told the doctors; and the court overruled the motion, and an exception was taken.

These physicians testified to certain physical defects and organic changes in various parts, which they observed, and which indicated injury by violence at some time and in some way; but they did not know the cause, except as informed by the plaintiff. The derangement of the nerve centers and spinal diseases, the most occult and unobservable of any .

Abbot and another vs. Heath.

symptoms of disease or injury, and the most permanent and incurable, and for which the damages were no doubt assessed by the jury in this case, the physicians did not know, and could not have known, anything about, except from the statements of the plaintiff alone. His feelings, sensations, pain and suffering, the source and ground of the opinions of these medical witnesses, had necessarily to be communicated by the plaintiff alone. I have referred more fully to their testimony of these subjective symptoms, that it may be seen how fully and completely it was based upon the statements of the plaintiff alone. His statements were not under oath, and they were first made to these medical witnesses between three and four years after his injury. Substantially the whole of their testimony was simply "*hearsay* evidence," never admissible by any rule, except as a part of the *res gestæ* or *ex necessitate*. Dr. Lyman testified that he made up his *judgment* that the plaintiff has the troubles mentioned *wholly* from what *Heath* (the plaintiff) had told him in regard to the symptoms, and his general medical knowledge.

A physician called upon to treat a patient must, of course, depend much upon the statements of the patient's feelings and sensations, but this is a very different case. In such a case the physician must depend upon his own observation of most of his present symptoms. A pretended physician might prescribe for a patient wholly from information derived from the statements of the patient communicated by letter, without even having seen him, but such a doctor would scarcely be a competent medical expert witness in court. Here the plaintiff might about as well have written to these two medical witnesses, and stated to them how and when he was injured, and his present subjective symptoms over three years afterwards, and obtained their opinions of his case under oath. The admission of this testimony by the court was a palpable and material error. It was all

the medical testimony the plaintiff had to show the extent
and permanence of his injury, and his damages found by
the jury must have been mainly based upon it. The facts
embraced in a hypothetical statement upon which an opin-
ion of a medical witness is asked must be in evidence, and
sworn to be true, in the case, either before or afterwards.
*Gates v. Fleischer,* 67 Wis. 504; *Dilleber v. Home L. Ins.
Co.* 87 N. Y. 79; *Louisville, N. A. & C. R. Co. v. Falvey,*
104 Ind. 409; *Kelly v. Erie Tel. Co.* 34 Minn. 321. But
here the medical opinions are based wholly on the unsworn
statements of the plaintiff, in violation of one of the main
principles of the law of evidence. We dislike to reverse
judgments, and especially of this sort, but we must not
sanction such clearly incompetent medical evidence.

The case of *Quaife v. C. & N. W. R. Co.* 48 Wis. 513, is
cited by the learned counsel of the defendant in error as a
justification for this testimony. On motion of the defend-
ant, during the trial, the court appointed three physicians
at the suggestion of the defendant, and three at the sug-
gestion of the plaintiff, to make a medical examination of
the plaintiff, Mrs. Quaife, as to her injuries. The question
was whether she was suffering pain and lameness of the
hip joint, to indicate a fracture of the neck of the femur.
One of these medical witnesses — Dr. Beebe — testified that
they could find no appearances that would indicate lame-
ness or pain, and that they based their opinion on what
Mrs. Quaife told them as to her suffering pain in the hip
joint and lameness. Mr. Justice TAYLOR said in the opinion:
"In such a case we think it clearly competent for the ex-
pert to give an opinion from the general appearance, ac-
tions, and looks of the patient, and what she says at the
time in regard to her condition. Both parties on the trial
seem to have conceded that the statements made by the
plaintiff to the examining physicians were competent evi-
dence both for and against her, and this was undoubtedly

Abbot and another vs. Heath.

the correct view." This court held the evidence competent, because the physicians relied upon such general appearance, actions, and looks of the patient, together with what she said, as the basis of their opinion, and because of the above *concession* of the parties. The opinion then says: "It would have presented a different question if the plaintiff, on her part, without the knowledge or presence of witnesses for the defendant, had called experts to examine her as to her present condition, for the purpose of giving evidence on the trial and not for the purpose of *giving* medical advice. In that case the objection would, perhaps, have been well taken, that in forming an opinion as to her condition the witness should not be allowed to take into consideration her statements made at such examination." This part of the opinion completely covers the present case, and condemns the medical testimony taken in it. It is an authority directly against, and not in favor of, the admissibility of this evidence. Two other reasons are given why the above testimony of Dr. Beebe was competent. "The examination was not sought by the plaintiff, and her statements were subject to cross-examination."

In *Kreuziger v. C. & N. W. R. Co.* 73 Wis. 158, it was held that medical testimony based in part upon what the plaintiff and another stated to the witness was improper. The case of *Stewart v. Everts,* 76 Wis. 40, is very much in point with this case. It is said in the opinion by Mr. Justice TAYLOR, and pertinent to that case as well as this: "Whatever may be the rule as to the admissibility of the statements of a party when consulting a physician or surgeon for the purpose of obtaining advice or treatment for his disease or injury, we are clear that when such statements are made by the party after action commenced, to an expert, for the sole purpose of calling such expert, as a witness for himself on the trial of the action, to give an opinion as to the nature of his complaint or injury and its

Abbot and another vs. Heath.

connection with certain alleged causes, such statements are inadmissible in his behalf." The learned counsel of the defendant in error insists that the above case should not be used in the argument or decision of this case, because they called upon the opposite counsel to cite authorities on the argument of the question in the trial court, and they did not cite this case; but the case of *Quaife v. C. & N. W. R. Co.* 48 Wis. 513, was the one suggested. I need not say that this court cannot be governed in the decision of a material and important question of law by any such consideration. The learned counsel of the plaintiffs in error cites the following further authorities on this question: *Jones v. Portland*, 88 Mich. 598; *Comm. v. Leach*, 156 Mass. 99; *Davidson v. Cornell*, 132 N. Y. 228; *Roche v. B. C. & N. R. Co.* 105 N. Y. 294. The learned counsel of the defendant in error cites no authorities, and I can find none, adverse to *Stewart v. Everts*, 76 Wis. 40. Any other rule in respect to expert medical testimony would be most unreasonable.

We have considered the other exceptions, and do not think them sustained, as errors of law. It may be proper, however, to suggest that a special verdict of the jury in favor of the plaintiff in such a case ought to find the defendant guilty of negligence by the acts found, and it ought not to be left to be *spelled* out or inferred from the facts.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.