BELL, Respondent, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*May 3—May 27, 1919.*

*Negligence: Injury to passenger on street car: Evidence: Res gestæ: Report of accident: Admissions of agent: Physicians: Expert testimony: Basis of opinion: Cross-examination: Reading from medical works: Question for jury: Trial: Special verdict: Question in alternative or disjunctive form: Excessive damages: New trial: Newly discovered evidence: Materiality: Appeal: Review of verdict and judgment: Prejudicial error: Admission of incompetent testimony: In jury cases: In court cases.*

1. In an action against a street railway company for injuries to plaintiff's eyes from an explosion of electric light lamps in one of defendant's street cars on which plaintiff was a passenger, caused by contact with defective trolley wires, the question of the correctness of the medical tests by defendant's experts, in view of plaintiff's own testimony that his vision was gone in both eyes, was for the jury.

2. Where defendant's expert, on cross-examination, made a qualified negative answer to a question as to whether he considered a named writer an authority on optic atrophy, a question to him as to whether he remembered having read certain language of such writer, which was then read by plaintiff's counsel, was error, as, under the guise of finding the witness's familiarity therewith, the contents of the work itself would thus be placed before the jury, in evasion of the rule that textbooks or scientific works cannot be read in evidence to the jury.

3. The conductor's report of the accident, made at the end of his run, nearly an hour and a half after the accident, was no part of the *res gestæ*.

4. Such report was not admissible as an admission of a state of facts, or of negligence on the part of the defendant, for an agent of a corporation cannot make such an admission and such reports are made for the information of the principal and are often based largely upon statements of others to the agent.

5. The admission of the opinion of plaintiff's expert, who had examined plaintiff since the accident but who had never treated him, that plaintiff was totally blind in his left eye, based partly upon examination and partly upon subjective symptoms or upon what plaintiff had told him, was error.

6. A physician who treats a patient may give an expert opinion based upon the result of his examination and statements made to him by the patient; but one who does not so treat the patient cannot give such opinion.

7. In cases tried by the court the reception of incompetent evidence will not be held prejudicial unless it is the only evidence supporting some essential feature of the judgment.

8. In jury cases the reception of incompetent evidence is not reversible error unless in the judgment of the court the result might probably have been different had it been excluded.

9. The result reached in the trial court should not be disturbed on appeal unless clearly wrong.

10. Under sec. 3072m, Stats., error in admitting the conductor's report of the accident, substantially covered by his testimony, in the reception of the contents of a medical work and of an expert opinion that plaintiff's injury was permanent, in view of the conflict in the evidence, the jury's opportunity to note plaintiff's conduct and appearance and to judge of his credibility, and of a direct conflict in the medical testimony, was not prejudicial error.

11. Special questions to the jury using the words "flash" and "explosion" were not objectionable as being in the alternative or disjunctive form, where the identity of the cause of injury was not in question and where such words were understood by the jury to mean one and the same phenomenon.

12. A verdict of $25,000, awarded to the plaintiff, about twenty-eight years of age at the time of the injury, who had been earning $780 a year and was studious, industrious, and ambitious, for an injury to his eyes resulting in medical expense, pain and suffering, diminished earning power and capacity for enjoying life, and necessitating added care by members of his family or others, was not excessive.

13. A motion for a new trial on the ground of newly discovered evidence as to plaintiff's state of health before his injury, which did not materially alter the facts previously presented, was properly denied.

ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge.    *Affirmed.*

Action to recover damages for personal injuries. January 21, 1917, plaintiff was a passenger on one of defendant's cars; and the complaint alleged that when the car reached the Mason–Jackson crossing some of defendant's trolley wires, heavily charged with electricity, were then defective, broken, hanging down, and out of repair, and were negligently permitted to come in contact with the car; that by reason of said contact and the sudden and violent turning on of the electric current by the motorman, and the defective condition of the electrical appliances of the car, and the overloading of the electric light wires and electrical appliances of the car, the current breaker, electric light lamps or bulbs, and other electrical appliances were caused to explode with great force and violence, causing particles and pieces therefrom to fly with great force throughout the car to plaintiff's face and eyes. That by reason of the striking of said particles and glass into plaintiff's eyes and the flash accompanying the explosion both his eyes were injured so that he became entirely blind in the left eye and partially blind in his right eye, and that he believed said condition to be permanent.    He asked damages in the sum of $20,250.    At the trial he was allowed, over defendant's objection, to amend the amount asked for damages to $50,000, and before the close of the trial plaintiff claimed he was permanently blind in both eyes.    The answer put in issue all allegations as to defendant's negligence and the amount of damages sustained by the plaintiff.

The jury found (1) that plaintiff was injured by an electrical explosion or flash; (2) that the car on which he was a passenger came in contact with a broken overhead wire so as

to conduct electric current in such a manner as to cause such explosion or flash; (3) that defendant was guilty of negligence in permitting the car to come in contact with the wire; (4) that such negligence was the proximate cause of plaintiff's injury; and (5) that he sustained damages in the sum of $25,000.

Judgment in favor of plaintiff was entered upon the special verdict September 5, 1918, and on the 20th of the same month defendant appealed and the record reached this court October 9th. On October 30th the defendant made a motion in this court returnable November 8th to remit the record to the trial court with directions to entertain a motion to set aside the verdict and judgment and grant a new trial because of newly discovered evidence tending to show plaintiff was not totally blind. The motion was denied December 3, 1918. Defendant then made a motion in this court, returnable January 7, 1919, to dismiss the appeal for the same purpose as desired in its former motion upon the same affidavits, which motion was heard and denied on the same day.

For the appellant there were briefs by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *Carl Muskat.*

*Henry Mahoney,* attorney, and *W. L. Gold* and *W. H. Timlin,* of counsel, all of Milwaukee, for the respondent.

VINJE, J. Owing to the claim of such serious injury to plaintiff's eyes and the large amount of damages asked by him the case was necessarily tried very thoroughly. The result is a printed case of over 600 pages, more than 200 of which are devoted to the medical testimony of the nine doctors that were called, five by the plaintiff and four by the defendant. This statement is made not by way of criticism, but as a reason why no detailed statement of the evidence bearing upon the merits will be included in the opinion. There is some conflict in the evidence as to the cause of the injury and a sharp conflict as to its degree, plaintiff claiming total

blindness in both eyes, and defendant only partially impaired vision at least so far as the right eye is concerned.    The evidence has been carefully examined by every member of the court with the result that we cannot say it so preponderates against the finding of total blindness in both eyes that it should be disturbed.    Claim is made that the jury did not give due weight to the expert evidence of defendant and especially to the result of its medical tests.    Were we triers of the fact we might come to a different conclusion on the subject, but the correctness of the tests, in view of plaintiff's own testimony to the effect that his vision was gone in both eyes, was one for the jury.

Errors in the admission of testimony, in the submission of the special verdict, and in refusing to give requested instructions are urged, and these will be considered in so far as they seem material.

Dr. Beebe was called as an expert by the defendant and plaintiff admitted his qualifications to testify as such.    On cross-examination he was asked by plaintiff's counsel if he considered Oppenheim an authority on optic atrophy.    On receiving a qualified negative answer and the statement that witness had read a part of Oppenheim's works, he was asked this question:

"Do you remember having read at some time in your reading the following language? 'Great interest is attached to the visual disturbances which are caused by dazzling, by intense illumination of the retina, and especially as recent experience has shown by the effect of light from the electric arc, electric ophthalmia.    The affection, which is usually of the nature of scotoma, develops with pain in the eye, photophobia, blepheroclonus, etc., as a rule it usually rapidly disappears, but it may develop into blindness.    The result of the ophthalmoscopic examination is negative, or it may show spots in the macular region.    And for that authority cite Upto.    And less often marked atrophy.'    Now, having your attention called to that passage from Oppenheim in his chapter on Visual Disorders, will you, do you, recall ever having read that before?"

The witness stated that he could not recall having read it and that he could not deny that it was a correct statement of what is generally taken to be the effect of dazzling on the human eyes by men skilled in the medical profession. The defendant made seasonable objections to the competency of the admitted evidence, moved to strike it out, and requested the court to instruct the jury to disregard it. Each such effort was met by an adverse ruling. Plaintiff's counsel stated that his purpose in asking the question was to ascertain whether or not the witness was familiar with this passage. Under repeated decisions of our court its admission was error. *Boyle v. State,* 57 Wis. 472, 15 N. W. 827; *Kreuziger v. C. & N. W. R. Co.* 73 Wis. 158, 40 N. W. 657; *Waterman v. C. & A. R. Co.* 82 Wis. 613, 631, 52 N. W. 247, 1136; *Zoldoske v. State,* 82 Wis. 580, 605, 52 N. W. 778. If, under the guise of finding out a witness's familiarity with the contents of medical works, you can read extracts therefrom to him and inquire if he is familiar with them, then you can get the contents of every medical book before the jury. This our court, for good reasons not now necessary to repeat, has declared cannot be done. In *Zoldoske v. State, supra,* p. 605, it said: "Text-books or scientific works cannot be read in evidence to the jury, and the rule cannot be defeated or evaded by getting their contents before the jury by having a witness testify to what they contain," and, it may be added, it cannot be done by asking him if he is familiar with such and such a passage, reading it, for that places the contents of a medical book just as effectively before the jury as though the book itself were introduced. The case of *Ruck v. Milwaukee B. Co.* 144 Wis. 404, 129 N. W. 414, is relied upon by plaintiff as justifying the reception of the evidence. The case does not so hold. Its ruling is to the effect that a witness who has testified to a given opinion may be asked upon cross-examination if he has not formerly expressed or approved of a different or contrary opinion, in that case alleged to have been contained in a published arti-

cle. Such evidence was competent because affecting the probative force of the evidence given by him. Here the only real purpose of eliciting the evidence was to place it before the jury. No claim was made that the doctor had previously expressed any opinion concerning the passage read or an opinion different from that testified to by him in chief, and the ostensible purpose of finding out if the doctor was familiar with the passage was entirely beside any issue that the court or jury was interested in.

The defendant was required by the court to produce for the inspection of plaintiff's attorneys the report of the accident made by the conductor at the end of his run, nearly an hour and a half after the accident. The report was received in evidence over timely objection made by defendant, and its efforts to have it struck out and to have the jury instructed to disregard it proved unavailing. Its reception in evidence was error. *Lehan v. C. & N. W. R. Co., ante,* p. 327, 172 N. W. 787. It was no part of the *res gestæ. Steinhofel v. C., M. & St. P. R. Co.* 92 Wis. 123, 65 N. W. 852. It was not admissible as an admission of a state of facts or of negligence on the part of the defendant, for an agent of a corporation cannot make such an admission. *Randall v. Northwestern T. Co.* 54 Wis. 140, 142, 11 N. W. 419; *Kamp v. Coxe Bros. & Co.* 122 Wis. 206, 99 N. W. 366; *Garske v. Ridgeville,* 123 Wis. 503, 102 N. W. 22; *Zentner v. Oshkosh G. L. Co.* 126 Wis. 196, 105 N. W. 911. Such reports of accidents are furnished by the agent for the purpose of giving the principal information relative thereto. They are often, as in this case, based in part or largely upon what others tell the maker of the report has happened. If the production of such information gathered by one party can be compelled, there is no reason why the other party cannot compel the production of information gathered by the adversary. In this case plaintiff's attorney stated that he did not know what use he wished to make of the report until he had examined it. Defendant offered to produce it if the

whole of it would be received in evidence, but the offer was not accepted and was subsequently withdrawn, so the case stands as if no offer had been made. Its admission as evidence in chief, as before stated, was erroneous.

Dr. Churchill was called as an expert witness by plaintiff, whom he had examined since the action was begun but had never treated, and he was allowed to give an opinion that plaintiff was totally blind in his left eye, basing such opinion in part upon his examination and in part upon subjective symptoms or upon what plaintiff had told him. This was error. *Stewart v. Everts,* 76 Wis. 35, 44 N. W. 1092; *Abbot v. Heath,* 84 Wis. 314, 54 N. W. 574; *Stone v. C., St. P., M. & O. R. Co.* 88 Wis. 98, 106, 59 N. W. 457. A physician who treats a patient may give an expert opinion based upon the result of his examination and statements made to him by the patient, but not one who does not treat the patient. The reason for the application of different rules to the two cases lies in this: When a patient submits himself to treatment he does so for the purpose of curing himself of the malady afflicting him, and he is desirous to do so, and the presumption is that he will tell the truth to the doctor. If he does not, he knows that not only may a cure not be effected but he may seriously jeopardize his health by giving false information or withholding important information. But when he goes to a doctor for examination for the purpose of having him testify but not treat him, he runs no risk by giving false information and the inducement may be to hide rather than to reveal the truth.

The more serious question arising from the errors just noted is, Has the reception of the incompetent evidence collectively or separately affected the substantial rights of the defendant within the meaning of sec. 3072m, Stats. 1917, which provides that no judgment shall be reversed unless in the opinion of the court, after an examination of the entire action, the error complained of has affected the substantial rights of the person seeking to set aside the judgment? The

mandate of this statute was previously and is now contained in sec. 2829, Stats. 1917, and has long been recognized as a judicial rule in this state.    *Allard v. Lamirande,* 29 Wis. 502; *Bosworth v. Tallman,* 66 Wis. 22, 27 N. W. 404; *Thorn v. Smith,* 71 Wis. 18, 36 N. W. 707; *LaChapelle v. Warehouse & B. S. Co.* 95 Wis. 518, 70 N. W. 589.    The rule is a plain and wholesome one, but is not always easy of application to a particular case.    In the ultimate analysis the question of whether an error is prejudicial or not is a matter of judgment and seldom capable of even approximate demonstration.    True, in some cases the evidence may be of such a character that it can be practically demonstrated that had the incompetent evidence been excluded the result would have been the same.    In other cases no item of competent evidence can be specifically pointed to as neutralizing or outweighing the incompetent evidence, and yet the judgment of the court upon the whole record is that the verdict would probably have been the same had the incompetent evidence been excluded.    In cases tried by the court the rule is that the reception of incompetent evidence will not be held prejudicial error unless it is the only evidence supporting some essential feature of the judgment.    *Hannah v. Knuth,* 161 Wis. 467, 154 N. W. 985.    In jury cases the rule is that the reception of such evidence is not reversible error unless in the judgment of the court the result might probably have been different had it been excluded.    *Oborn v. State,* 143 Wis. 249, 126 N. W. 737; *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179.    And the result reached in the trial court should not be disturbed on appeal unless clearly wrong.    *Mechanical A. Co. v. A. Kieckhefer E. Co.* 164 Wis. 65 (159 N. W. 557) and cases cited on p. 67.    Applying these principles to the errors and record before us we reach the conclusion that the errors complained of are nonprejudicial.

As to the report of the conductor, the only substantial item contained in that and not testified to by him on the trial was

Bell v. Milwaukee E. R. & L. Co. 169 Wis. 408.

the mention of the presence of a broken span wire as the cause of the accident. He explained that by stating, as the fact no doubt was, that the report was made up in part of statements made to him by others; that he did not see a span wire but its presence was reported to him. The jury no doubt understood the situation and based their second finding upon the positive evidence of eye-witnesses who saw the broken span wire.

It is not so easy to show how the reception of the contents of Oppenheim's work and the opinion of Dr. Churchill as to the permanence of plaintiff's injury was neutralized or rendered practically harmless by the evidence of others. There was a sharp conflict in the expert medical testimony as to the extent and permanence of plaintiff's injury. The fact, however, that there was a serious dazzling explosion or flash on the car in question and that plaintiff sustained a serious injury to the left eye and probably to the right one also, is clearly established. He was on the witness stand a great many times during the protracted trial and he testified he was blind; the jury saw him and had an opportunity to note his conduct and appearance and to more correctly judge of his credibility than we have. He said he was totally blind, and the jury no doubt believed him. The medical testimony was in direct conflict even with the incompetent evidence out. In such a situation we cannot say that the result would probably have been different if the errors in the admission of evidence had not occurred, or that the result reached is clearly wrong.

The ruling that the admission in evidence of the incompetent testimony was nonprejudicial disposes of the trial court's failure to grant the motion to strike it out and of its failure to grant the request for instructions to disregard it.

Criticism is made by counsel for defendant that questions 1 and 2 were in the alternative or disjunctive form, and having been answered in the affirmative the verdict is defective because some of the jurors may have concluded there was

a flash and others an explosion, and so no agreement was reached as to what actually occurred, and they cite *Walcza-kowski v. Milwaukee E. R. & L. Co.* 157 Wis. 191, 147 N. W. 20; *Samulski v. Menasha P. Co.* 147 Wis. 285, 133 N. W. 142, and other cases, to sustain the claim made. It is not necessary to discuss the cited cases because it is evident from the evidence, instructions, and the questions themselves that the words "flash" and "explosion" were used synonymously to indicate the one physical phenomenon that occurred in the car when plaintiff's eyes were injured. The unity or identity of the cause of the injury claimed by the plaintiff was not in question, though the terms "flash" and "explosion" were used interchangeably to denominate it. They were meant and understood by the jury to relate to only one and the same phenomenon, and the questions are therefore not subject to condemnation as being disjunctive or in the alternative in a material sense.

The jury awarded plaintiff $25,000 damages, and we are asked to reduce them because excessive. It appears that plaintiff was about twenty-eight years old at the time of the accident and had been earning $780 a year; that he was of studious and industrious habits and ambitious to get on in life. Cases are cited to us by both sides bearing upon the question and showing a great latitude in the assessment of damages for similar injuries. They are not very helpful in disposing of the question because of the great latitude shown by them. It may be true that the present value of an annuity for plaintiff based upon an earning power of $780 a year is only $11,927.76, but that measures only a portion of his damages—the destruction of his earning power, assumed to be stationary. It takes no account of his medical expenses, pain, and suffering and his diminished capacity for enjoying life, as well as the added care and attention that must be given him by members of his family or others. The amount assessed for the injuries sustained cannot be held excessive.

The motion to remand the case to the trial court with leave

to entertain a motion for a new trial on the ground of newly discovered evidence, in case the judgment is affirmed, we treat as submitted and taken under advisement before the argument upon the merits of the appeal was begun.  This motion is based upon substantially the same grounds as the two previous motions denied by this court.  The additional evidence claimed to exist as to plaintiff's state of health before the injury does not materially alter the facts previously presented, and the motion is therefore denied.

The assignments of error not specifically treated herein are deemed not well taken.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J. *(dissenting)*.  Upon the testimony in this case, the errors pointed out in the majority opinion and what appears in the record subsequent to the trial I am satisfied that there should have been a new trial.