LaChapelle, Respondent, vs. Warehouse & Builders' Supply Company, Appellant.

*February 26 — March 16, 1897.*

*Conversion: Measure of damages.*

1. In an action for the conversion of a quantity of paving cedar, evidence that the same was delivered on defendant's dock for storage; that it was afterward removed by defendant to its yard; and that when it was demanded by plaintiff the defendant failed to produce the same property, but offered to deliver some intermixed cedar of inferior quality, is *held* to sustain a finding of a conversion.

2. Paving cedar being an article of general merchandise, the proper rule of damages for its conversion is its value as such merchandise and not as firewood, and it is not error in an action for such conversion to exclude evidence of its value for firewood.

3. In such action, the exclusion of testimony as to value by a witness who said that he did not know of any demand for paving cedar for home use or anywhere, nor know what its market value was at the time it was converted, could not prejudice the defendant, and was not an error for which a judgment for the plaintiff should be reversed.

4. Where, in such action, the only evidence as to the value of the property fixed it at ten dollars per cord, it was not error for the court to instruct the jury to allow that value for all that they should find had been converted, with interest at six per cent. from the commencement of the action.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

This was an action against the defendant for the conversion of eighteen double cords of cedar paving posts, the property of the plaintiff, tried in the superior court of Douglas county. The complaint alleges that the defendant was, at the several times mentioned, a foreign corporation, organized and existing under the general laws of Minnesota, doing business at the city of Superior, in Douglas county, Wisconsin, and as such conducting and operating a dock in

said city, and that, with the knowledge and consent of the defendant, the plaintiff placed eighteen double cords of cedar paving posts, valued at $18 per cord, on its dock; and alleged the subsequent conversion of the same by the defendant.

The answer was a general denial, coupled with a special denial that the defendant was a foreign corporation, and alleging that it is a Wisconsin corporation, doing business as such under its said corporate name at Superior, Wisconsin, but denied that it was such at any time prior to March 27, 1894. The defendant set up a counterclaim to the effect that when the cedar posts were placed on the dock, the dock was conducted and operated by the Billings Hardware Company, which continued to conduct and operate it until February 1, 1894, when said company conveyed and assigned the said dock, etc., to the said Minnesota corporation, and to W. P. Cockey the accounts and lien against the plaintiff for dockage and storage of said cedar posts, upon which there was due $52; that in April, 1894, Cockey assigned said account to the defendant, and at about the same time the said *Warehouse & Builders' Supply Company* conveyed said dock property to the defendant, and it still owns the same. The defendant set up a further counterclaim of $248 for dockage at said dock, against the plaintiff, of 500 cords of cedar in 1892, when said dock was operated part of the year by the said Minnesota corporation and part by the Billings Hardware Company; that said account had been assigned to the defendant.

The defendant was named in the summons as the "*Warehouse & Builders' Supply Company*," and the service appears to have been made July 3, 1894, on the said defendant, by delivering a copy and reading the summons to W. C. Moss, its general manager.

At the trial, the plaintiff gave evidence tending to show that October 4, 1892, he put on the dock of the *Warehouse*

LaChapelle vs. Warehouse & Builders' Supply Co.

*& Builders' Supply Company* twenty-five cords of cedar, and thirty or thirty-five cords for Kiever & Burke; the twenty-five cords were chopped cedar, and piled by itself in front of the dock, not marked; that it was removed from the dock five or six days thereafter, without his knowledge or consent. It was admitted that Mr. Cockey was president, and Mr. Moss was secretary, of the defendant. The witness testified that he "spoke to Mr. Cockey about the cedar, and asked him where he got his authority to remove it into his own yard. Told him it was mine, and that there was nothing due on it except dockage. He said everybody had been landing cedar on the dock, and that he took it for dockage. He said that any time I wanted the cedar it would be put where I could get it. I could have it by paying the dockage. That the dockage would be $3 a car load." And that he (witness) told him that that would be all right. The spring before the action was commenced he asked Mr. Moss about the cedar. He said he was ready to return it if witness would pay the dockage of $52. He told Moss he would not pay that. He would pay what was agreed on and no more. That he told him he wanted the cedar or the price of it. He said he would do nothing until he got $52. He said he had the cedar there, and would return it and all that it would be short if the eighteen cords were not there. That witness told him he would take it back if it was his own. That they went and looked at it, and there was only a few sticks here and there that belonged to him. He said he took eighteen cords of cedar, and was willing to return the same amount of cedar. That he told him he wanted his own. The cedar that was removed and piled back there, and which he had delivered on the dock, was not the cedar that Mr. Moss pointed out to him as being his. The plaintiff's evidence was corroborated by that of his son and of a Mr. Thompson. Evidence was given tending to show that the cedar had been disposed of to other parties. Mr. Cockey

testified that he was president of the *Warehouse & Builders'
Supply Company* organized, etc., under the laws of Minne-
sota, and also of the Warehouse & Builders' Supply Com-
pany organized, etc., under the laws of Wisconsin, when the
action was commenced. They were not two corporations
under the same name.

The evidence on the part of the defendant tended to show
that there had been no conversion of the plaintiff's cedar,
and that the cedar remaining near the dock, disowned by
plaintiff, was the cedar he had landed on the dock in Oc-
tober, 1892; and it appeared that the *Warehouse & Build-
ers' Supply Company*, June 6, 1894, called on the plaintiff to
pay for dockage and storage $52 on cedar unloaded on the
company's property, and to remove the same. The removal
of the eighteen cords from the dock, and piling it in the
yard, was November 16, 1892. Evidence was given tending
to support the first counterclaim. As to the second coun-
terclaim, it appeared substantially that all the dockage, etc.,
therein claimed was upon cedar landed by the plaintiff on
the dock for Kiever & Burke, under a contract by which
they were to pay the dockage and storage on it; and the
defendant had charged the same to them, and had never
made any charge against the plaintiff, or any claim therefor
against him, until after this action had been commenced;
that said cedar was to become and be the property of Kiever
& Burke as soon as placed on the dock. The defendant put
in evidence a general assignment of the dock bills and ac-
counts, dated January 31, 1894, from the Billings Hardware
Company to W. P. Cockey, and an assignment of the same
to the *Warehouse & Builders' Supply Company*, dated April
27, 1894; also articles of incorporation of the Warehouse
& Builders' Supply Company, dated March 26th, and filed
in the register's office of Douglas county, March 27, 1894.
The corporation was created for " the transaction of a whole-
sale and retail mercantile business," etc.

The defendant called as a witness one Schwallenbach, who testified that he was a contractor, and had laid cedar pavement, and was familiar with the price of cedar in the years 1892, 1893, and 1894; and asked him what paving cedar was worth in the city of Superior in 1893. Upon objection, the inquiry was excluded. The same question was asked as to 1894, with the same result, the objection being that the question should have been as to its market value. The inquiry as to its market value was put in various ways, with the result that the witness stated that there was no demand there for home use, and it had no market value there for paving; that there was then no demand for cedar of any kind; that he did not know if there was any demand for cedar outside of Superior; he had not heard of any. He said it could be used for firewood, but this was stricken out. He testified that there was no paving being done, and no one had any occasion for paving cedar, and he did not know what the market value was. He was asked what paving cedar was worth there in the spring of 1894, for any purpose, but the court held he was not competent to testify on the subject.

The defendant asked the court to direct a verdict in its favor, but the court refused the request. The defendant requested the court to give various instructions to the number of fourteen, but, as all of them not manifestly improper or irrelevant were embraced in the general charge, it is not material to state them. The case was submitted to the jury to find a general verdict, and to answer three questions. The jury found for the plaintiff in the sum of $166.05. The questions were answered, in substance, that they allowed $18 for dockage and storage of the cedar in question, and nothing for the dockage of any other cedar, and $184.05 for conversion of the cedar in issue. The plaintiff had judgment on the verdict against the defendant, the *Warehouse & Builders' Supply Company* (a corporation duly organized and ex-

isting under the laws of Minnesota), from which the defendant appealed.

*Frederick H. Remington,* for the appellant.

For the respondent there was a brief by *A. T. Rock* and *H. H. Grace,* and oral argument by *Mr. Rock.*

Pinney, J.. The questions in this case are, in the main, questions of fact, and there is evidence sufficient, in our judgment, to sustain the findings of the jury.

1. The defendant, the *Warehouse & Builders' Supply Company,* was sued by that name only, and the complaint was against that corporation " as organized and existing under the laws of Minnesota," and doing business as such in the city of Superior. The judgment is against it as such corporation. There is nothing in the record indicative of a purpose or intention of suing the Wisconsin corporation of that name. The defendant, " *Warehouse & Builders' Supply Company,*" for answer to the complaint, denies all the alle- gations of the complaint, except those expressly admitted, and then the defendant proceeds to claim that it was an en- tirely different person from the Minnesota corporation and makes a defense on that basis, and makes defenses at the same time, and in the opening part of the answer, against the claims set forth against the Minnesota corporation. The court seems to have considered that the defendant was a Minnesota corporation; and, finally, after quite a consider- able mystification over this clever subtlety, the counsel for the defendant, in support of his title to the counterclaims set up, expressed the view that this court would reach the conclusion that the trial court " was right in considering the date of incorporation as immaterial, and that the two cor- porations were, for all practical purposes, the same." We concur with counsel and with the trial court on this point, and think that both corporations represented and controlled the same rights and interests in Wisconsin, under organiza-

tions in the respective states. We hold that the action and judgment was against the Minnesota corporation. The cedar, if converted at all, was converted before the Wisconsin corporation was organized.

2. There is sufficient evidence from which the jury might properly find a conversion of the paving cedar, and by the Minnesota corporation defendant, doing business in Wisconsin. The question whether there was a conversion of the cedar was fairly submitted to the jury under instructions favorable to the defendant. Indeed, this was the principal question in the case, and, as there was conflicting evidence, this court will not disturb the finding of the jury.

3. There was no error in refusing the fourth, fifth, and eleventh requests on the part of the defendant to charge the jury. There is nothing to show that the plaintiff's cedar was lost or misappropriated through any silence or fault on the part of the plaintiff, or that he knew or supposed that the defendant, or its officers, were ignorant of any intermixture of it with cedar belonging to the defendant or other parties. Its duty, as bailee, was a plain one, namely, to keep the property, as delivered on the dock, separate from all other property. If it failed to do so, and converted the property to its own use, it is certainly liable in damages. The court stated to the jury what would constitute a conversion, to which no exception was taken. It could not properly, under the state of the evidence, say to the jury that there had been no conversion of the cedar. Even if the same kind of cedar remained in the yard, the plaintiff was not bound to take it as his own; but the uncontradicted evidence was that it was not of the same quality. There was no evidence to show that the plaintiff wilfully or indiscriminately intermixed his cedar with that of the defendant or of others. The evidence shows clearly that whatever intermixture may have occurred, was through the acts of the defendant.

4. The court did not rule that the defendant's witness Schwallenbach could not testify what the market value of paving cedar was at the times mentioned. Inquiry in this respect was freely permitted. Paving cedar is an article of general merchandise, and the inquiry as to its market value is a practical method of ascertaining what it was worth. We think that it was proper to ask the witness what paving cedar was worth at the times named, but his evidence showed that he did not know of any demand for it for home use at Superior city or elsewhere,— he had not heard of any; that there was no paving being done in Superior city, and he did not know what its market value was. He had testified that he knew the prices for paving cedar during the years named, but the defendant's counsel abstained from asking what such prices were. We do not think it can be said that the defendant was prejudiced by the rulings complained of. He did not know of any market value for the cedar, and the defendant got substantially the benefit of all he did know, except as to prices, which it might have had, presumably, if it had desired it. What *paving* cedar was worth for firewood was 'not a proper rule of damages for its conversion. We think that the rulings complained of present, in view of the facts and circumstances of the case, no reversible error. We do not think there is any reason for supposing that they injuriously affected the substantial rights of the defendant, or that the judgment should be reversed on account of these rulings. R. S. sec. 2829; *Bosworth v. Tallman,* 66 Wis. 22; *Thorn v. Smith,* 71 Wis. 18; *Renier v. Dwelling House Ins. Co.* 74 Wis. 89–99.

5. The evidence of Burke clearly showed that the plaintiff did not use the dock to land the cedar for Kiever & Burke, but that they had its use for that purpose, and that the plaintiff was not liable for the dockage thereon. The loss of the contract between them and the plaintiff was shown, and parol evidence was rightly admitted to show that they

were to pay such dockage, and the defendant had charged it to them, and not to the plaintiff. About these facts there was no conflict of evidence. The court left it to the jury to find whether there was cedar placed on the dock by the plaintiff, other than that in issue, and other than the Kiever & Burke, etc., cedar, and, if so, to allow the defendant fifty cents per cord thereon, and interest for two years at six per cent.; but the jury found against the defendant on this claim. The question as to what amount was due for the dockage on the cedar in dispute was rightly left to the jury upon the evidence.

6. The only evidence as to the value of the paving cedar was that it was of the value of $10 per cord. The court rightly told the jury to allow that sum for the amount of paving cedar they should find had been converted, with interest at six per cent. for five months, being from the time the action was commenced. We do not find that there is any reversible error in the record.

*By the Court.*— The judgment of the superior court is affirmed.