LADD, Appellant, vs. WITTE, Respondent.

*November 12—November 28, 1902.*

*Appeal from justice's court: Affidavit: Pleading: Counterclaim: Cause*
*of action: Same transaction: Appeal and error: Immaterial*
*error: Physician and surgeon: Instructions to jury: Damages:*
*Evidence.*

1. To perfect an appeal from a judgment rendered in justice's court,
   sec. 3754, Stats. 1898, requires that the appellant file with his
   notice of appeal, an affidavit that the appeal is made in good
   ‘ faith and not for delay. Plaintiff appealed from a judgment
   rendered against him in justice's court. The affidavit, signed
   by plaintiff, after naming him, described him as "the above
   named plaintiff and appellant," alleged that the appeal was in
   good faith and not for delay, and "that he is the *defendant*
   above named." That plaintiff was the appellant appeared be-
   yond doubt or controversy from the entire record. *Held*, that
   the statement that appellant was *defendant* was mere surplus-
   age, and could not serve to neutralize or render ineffective the
   otherwise complete and sufficient affidavit.
2. A physician brought an action on *quantum meruit* in justice's
   court for services. After appeal taken, defendant was permitted
   by the appellate court to amend his answer and plead as a
   counterclaim a misrepresentation by plaintiff that the medical
   services were necessary. *Held*, that the counterclaim arose out
   of the same transaction stated in the complaint, and was prop-
   erly pleadable.
3. In such case the ruling allowing the amendment, if erroneous,
   cannot be prejudicial to plaintiff, where the court, at the close
   of the evidence, withdrew the counterclaim from the jury, and
   directed them not to consider the same or allow anything
   thereon.
4. Where the court, in an action on *quantum meruit* for a physi-
   cian's services, ruled that there was no proof of breach of war-
   ranty, and that the only question was the value of the services
   rendered, it is prejudicial error to give an instruction, in sub-
   stance, that if plaintiff, as an inducement to be permitted to
   perform an operation, assured and guaranteed. relief or recov-
   ery from the operation, and defendant relied thereon, the jury
   might take those facts and circumstances into consideration in
   determining the value of the services.
5. In such case the amount of damages demanded was $100, and
   there was no evidence to support a verdict for less than $50.

*Held*, that an instruction that if the jury "should be of the opinion that the services were of value to defendant," they must determine the value, under all the credible evidence, at any amount up to $100, is erroneous, as indicating to the jury the existence of evidence to justify a verdict for any sum between zero and $100.

6. In the absence of an express agreement to the contrary, a physician or surgeon who brings to the service rendered due skill and care, earns the reasonable and customary fee therefor, whether the outcome be beneficial to the patient or the reverse.

7. Where in an action on *quantum meruit* for a physician's services, there is no conflict in the evidence of experts as to the reasonable value of the services rendered, the jury cannot disregard the same, and use their own judgment in determining their value.

8. In an action on *quantum meruit* for a physician's services, it is not prejudicial error to refuse to instruct the jury that plaintiff is not precluded from recovering more than $50 by reason of having originally sent his bill for that amount, where the court, in the general instructions, had charged the jury to allow such sum as the evidence proved the value of the service to be, up to $100.

APPEAL from a judgment of the superior court of Milwaukee county: ORREN T. WILLIAMS, Judge. *Reversed.*

Plaintiff, a physician and surgeon, brought this action in justice court to recover for services in performing an operation upon the defendant's newly-born imperfect child, alleging such services to be reasonably worth $50. After judgment in favor of the defendant, and appeal by plaintiff to the superior court, he was permitted to amend "so as to make his claim $100 and interest." Defendant was permitted to amend his answer by adding a counterclaim for $5,000, based on allegation of representations by plaintiff that operation was necessary and would succeed; that in fact it was unnecessary and improper; and that by reason thereof, and of plaintiff's neglect to properly care for the child thereafter, death resulted. The defensive part of the answer was a general denial, and the assertion that the plaintiff promised and agreed to perform a successful operation, but did per-

form it in such negligent and careless manner that the child immediately died. After the completion of the evidence in superior court it was ruled that there was no evidence to support the counterclaim, nor to prove any defense to plaintiff's cause of action; whereupon the amount thereof was submitted to the jury, who returned a verdict of $35. A motion to set aside the same and for new trial was made by the plaintiff on the ground of inadequacy of the amount, and for errors in admission of evidence and in instructing the jury, which being overruled, judgment was entered in plaintiff's favor for the amount found, with costs, from which plaintiff brings this appeal.

*J. A. Eggen,* for the appellant.

For the respondent the cause was submitted on the brief of *Doerfler, McElroy & Eschweiler.*

DODGE, J. The respondent objects to the jurisdiction of this court by reason of a failure of jurisdiction in the circuit court over the appeal from the justice of the peace. The objection is that such appeal was ineffectual because of the affidavit of good faith, which was in the following words:

"*G. D. Ladd,* the above-named plaintiff and appellant, being duly sworn, on oath says that the appeal in the above-entitled action is made in good faith, and not for the purpose of delay, and that he is the *defendant* above named."

That affidavit was signed and sworn to by *Mr. Ladd,* the appellant. The objection is without force. The statute (sec. 3754, Stats. 1898) requires merely that the appellant, or some person authorized by him, must file with the notice an affidavit that the appeal is made in good faith, and not for delay. That *Ladd* was the appellant appeared beyond doubt or controversy from the entire record. The statement that he was defendant was mere surplusage (*Nett v. Serwe,* 28 Wis. 663), and could not serve to neutralize or render ineffective the otherwise complete and sufficient affidavit.

The first error assigned is in permitting the d..fendant to amend answer by adding the counterclaim. We discover no error in this ruling; certainly not to the extent of abuse of the discretion vested in the trial court. The counterclaim arose out of the same transaction as did the cause of action stated in the complaint, and, under sec. 2656, Stats. 1898, was properly pleadable. In any event, however, such ruling cannot have affected the judgment prejudicially to the plaintiff, for at the close of the evidence the court withdrew the counterclaim from the jury, and directed them not to consider the same or allow anything thereon.

2. Plaintiff assigns as error the giving of several instructions to the jury, namely:

(a) "If you find . . . that the plaintiff, . . . as an inducement to be permitted to perform the operation for the defendant, assured or guaranteed relief or the recovery of the infant from that operation, and that the defendant relied upon such statement, . . . you may take those facts and circumstances into consideration in determining the value of the services."

This instruction evinces such confusion of ideas as is sometimes ascribed to juries, but seems hardly possible to the judicial mind. The slightest reflection makes apparent that the only effect of breach of either a fraudulent or innocent warranty inducing the making of a contract of employment and payment *quantum meruit* is to defeat any recovery whatever thereon, except where made the basis of recoupment or counterclaim against an agreed price. It could have no possible effect to make either greater or less the actual market value of the service in fact performed. The court had already decided that there was no proof of either broken warranty or unskillfulness and negligence to defeat recovery *quantum meruit,* and that the only question for the jury was the reasonable value—i. e., customary price—for performing the operation. The quoted instruction invited the jury into that field of meretricious compromise of convictions for dam-

ages authorizing them to commute a doubt as to plaintiff's right of recovery into a diminution of the amount to which he had absolute legal right, if he recovered at all. If this instruction guided the jury at all, it necessarily guided them to injustice,—to awarding an amount other than the true reasonable value of the service rendered by plaintiff. Prejudicial error therein is obvious.

(b) "In case you should be of the opinion that the services of the plaintiff were of value to the defendant, you must determine the value of such services, under all the credible evidence in the case, at any amount up to the amount of $100.00."

While the direction to determine the value of the service upon all the evidence is correct, and is unassailed, appellant complains of the expression, "at any amount up to the amount of $100.00," as indicating to the jury that there existed evidence to justify any sum between zero and $100; while, as he contends, there was no evidence to support any finding less than $50. We think the instruction not necessarily obnoxious to this criticism. The court may be understood to mean any amount having support from evidence, and, so construed, the duty of the jury was accurately expressed. A cautionary phrase to such effect might well have been added to assure a right understanding by the jury, but we cannot think its omission reversible error. The hypothesis on which this instruction is predicated, viz., "in case you should be of the opinion that the services of the plaintiff were of value to the defendant," is most unfortunate, and misleading. It certainly tended to confine the jury to consideration of what and how much benefit resulted to the defendant from this fruitless incision into the body of his new-born child, whose death was certain without the operation, but equally occurred, it notwithstanding. That is not at all the test. So that a surgical operation be conceived and performed with due skill and care, the price to be paid therefor does not depend on the result. The event so generally lies with the forces of

nature that all intelligent men know and understand that the surgeon is not responsible therefor. In absence of express agreement, the surgeon who brings to such a service due skill and care earns the reasonable and customary price therefor, whether the outcome be beneficial to the patient or the reverse. Plaintiff requested a direct and plain instruction that the jury must be guided solely by the evidence relating to the value of services. It was error to incumber such direction by the hypothesis just discussed.

(c) In connection with the last considered instruction, plaintiff complains of another, not very clearly assigned as specific error, though the subject of due exception, which is likely to be important upon another trial, and ought not to pass without consideration. It is as follows:

"The opinions of experts as to the value of the services of the plaintiff are not conclusive upon you. Such opinions are advisory only. You must, in the end, use your own judgment in determining the value of the services, guided by the credible evidence in the case, and assisted by opinions of the experts."

This instruction is not without apparent support from certain language contained in the opinion in *Moore v. Ellis,* 89 Wis. 108, 61 N. W. 291, but it is in direct contradiction of what was decided in the later case of *Wurdemann v. Barnes,* 92 Wis. 206, 207, 66 N. W. 111, where the court held that, there being no evidence of value of a physician's services except his own, no question thereon for the jury existed. The same proposition was decided in *La Chappelle v. Warehouse & B. S. Co.* 95 Wis. 518, 526, 70 N. W. 589, where an expert having testified to a certain value, and no other evidence having been given, it was held that the trial court rightly instructed the jury to adopt that value. This seeming conflict between our own decisions largely disappears, however, upon a full understanding of the situation to which was applied the language used in *Moore v. Ellis.* There the evidence had taken a wide range, and there was extreme divergence be-

tween the opinions of witnesses, and considerable dispute as to the facts constituting the true hypothesis upon which such opinions should be based. It appeared that the plaintiff's professional services were largely in the way of collection of indebtedness and enforcement of mortgages, as to some of which it was claimed that he had made the loans and received a commission therefor from the borrower. Some of plaintiff's experts fixed his reasonable compensation at ten per cent. upon all sums collected. Some of defendant's experts testified to a customary charge of one per cent., and many of them that no charge at all was customary for collecting in loans on the making of which a commission had already been received by the attorney. So that the remarks in the opinion as to the mere advisory force of expert evidence of value, if undisputed, were wholly *obiter,* and must be considered as the expression merely of the writer of the opinion, and not as an authoritative decision of the court. Two antithetic decisions of the supreme court of Michigan are instructive. The first—*Wood v. Barker,* 49 Mich. 295, 13 N. W. 597—was closely identical in its facts with the case at bar. It was a suit for compensation *quantum meruit* by a consulting surgeon, the value of whose services was testified to by himself and the general practitioner whom he aided. No evidence of other experts was offered, nor was there any substantial conflict as to the character of his services, or the circumstances under which they were rendered. The court there said:

"There can be no presumption of law concerning the value of a surgeon's services, and there is no presumption that a jury can ascertain it without testimony of some kind from persons knowing something about such value. . . . We can see no sufficient reason for the suggestion that all of this [expert] testimony might be disregarded, and there is no rule which would allow the jury to entirely ignore the testimony, and at the same time to form an independent conclusion without testimony upon a matter which required proof

beyond their conjectures or their opinions.   .  .  .   There can be no safety to any one if juries are to use their own unguided views on such matters."

In *Walbridge v. Barrett,* 118 Mich. 433, 76 N. W. 973, there was presented an action for attorney's fees in conducting a suit for personal injuries.   There it was held error to refuse an instruction quite similar to that given in the present case.   The court said:

"Had there been no testimony of the value of plaintiff's services aside from that of the attorneys, the case would undoubtedly have been ruled by *Wood v. Barker,* 49 Mich. 295, 13 N. W. 597; but there was other evidence bearing upon the value of the services.   [Reciting rendition of bills, agreements as to per diems, and conflicting proof of details of the work done.]   Under these circumstances the rule in *Wood v. Barker* was not applicable, and the court should have instructed the jury that the opinions of the attorneys were not conclusive."

In line with this latter case and with the real decision in *Moore v. Ellis,* 89 Wis. 108, 61 N. W. 291, are the cases of *Head v. Hargrave,* 105 U. S. 45, and *The Conqueror,* 166 U. S. 110, 132, 17 Sup. Ct. 510.   In those cases it is pointed out that the testimony of experts was, at the best, not to the fact of value, but to the fact of their opinions, and therefore that the fact of value is one to be deduced by the jury from the various evidentiary facts presented before them, inclusive of the fact that certain expert persons have certain opinions thereon.   In the absence of such conflicting evidentiary facts, however, there seems to be no answer to the logic of *Wood v. Barker* that jurymen, as such, have no presumptive knowledge upon the subject of the value of professional services, and must be guided by the evidence offered upon the trial, and consequently are not at liberty to disregard the same and enter the field of their own uninstructed conjecture.   That view seems to have been tacitly adopted by this court in the two cases above cited,—*Wurdemann v. Barnes,* 92 Wis. 206,

66 N. W. 111; and *La Chappelle v. Warehouse & B. S. Co.* 95 Wis. 518, 70 N. W. 589. Such rule is not in conflict with another doctrine, laid down in *Remington v. Eastern R. Co.* 109 Wis. 154, 162, 84 N. W. 898, 85 N. W. 321, that upon trials to the court the opinions of experts as to the value of professional services of lawyers are never conclusive, for the reason that the judge himself has personal expert knowledge on the subject,—a principle recognized and applied in *Speiser v. Merchants' Exch. Bank,* 110 Wis. 506, 523, 86 N. W. 243, *Richardson v. Tyson,* 110 Wis. 572, 588, 86 N. W. 250, and other cases. The present case is clearly within the class of *Wurdemann v. Barnes, La Chappelle v. W. & B. S. Co.,* and *Wood v. Barker,* for there was no evidence whatever in conflict with that of the two physicians—one disinterested —that, in their opinion, the customary and reasonable value of the services rendered exceeded $50. True, those witnesses testified that, in their opinion, the value exceeded $100, but in that respect there may be said to have been conflict, for their previous testimony indicated that at another time they believed it to be less, but never less than the $50. Following, therefore, the precedents of our own cases, and adopting the reasoning of *Wood v. Barker,* we cannot avoid the conclusion that the instruction given was erroneous, and should not be repeated upon a new trial. Whether appellant's method of presenting his case has been such as to preclude a reversal on this ground need not be decided, since that results in any event for other reasons already stated.

3. Error is also assigned upon refusal of several of plaintiff's requests for instruction. These either were sufficiently covered by the general charge, or were not justified by the evidence, except, perhaps, the fourth, which was to the effect that plaintiff was not precluded from recovering more by reason of having originally sent his bill for but $50. Such instruction would, of course, have correctly stated the law, and might well have been given to assure full understanding by

the jury. We cannot say, however, that its refusal was re-versible error, for technically it is covered by the instruction to allow such sum as the evidence proved the value of the serv-ices to be up to $100.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.