(91 South. 551)

No. 24903.

## YOUNG BROS. v. Succession of VON SCHOELER.

(April 3, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Parties ⬤═95(4)—Error in name of party proper subject of amendment.**

Where a petition directed against a succession through error gave the Christian name of deceased instead of the administrator, the error was merely clerical and was the proper subject of an amendment, especially before issue was joined, as the nature and substance of the demand was not altered or any party defendant substituted.

**2. Evidence ⬤═265(8)—Allegations in petition by plaintiffs' father not binding on plaintiffs.**

In an action by persons suing as owners of a sanitarium for medical services, etc., rendered a patient, judicial allegations in the petition of plaintiffs' father, who had previously sued claiming to be the owner of the sanitarium, were not binding on plaintiffs and furnished no proof of ownership in the father as against them.

**3. Hospitals ⬤═8—Evidence held insufficient to show charges disproportionate to services.**

In an action by the proprietors of a sanitarium, evidence *held* insufficient to show that a charge of $2,500 for constant medical attention, nursing, and medicine from May 20, 1919, to March 3, 1920, in addition to charges for room, board, care, and attention, and an amount paid consulting physicians, was exorbitant and disproportionate to the services rendered or required.

**4. Evidence ⬤═571(7)—Opinions of reputable members of profession as to value and character of services of great weight.**

Courts must of necessity to a very great extent rely on the opinions of reputable members of the medical profession as to the value and character of services rendered by physicians.

**5. Physicians and surgeons ⬤═23—Value of patient's estate and ability to pay considered in fixing value of services.**

The charges of physicians are not to be determined wholly upon the skill of the physician, nor upon the amount of services rendered; but the value of the patient's estate and his ability to pay may be taken into consideration.

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Prentiss B. Carter, Judge.

Action by Young Bros. against the succession of Janie C. Von Schoeler. From a judgment for plaintiffs, defendant appeals. Affirmed.

J. D. Grace, of New Orleans, and Ellis & Cappel, of Covington, for appellant.

Lewis L. Morgan and L. C. Moise, both of Covington, for appellees.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

THOMPSON, J. The plaintiffs own the Fenwick Sanitarium, located at Covington, this state. Mrs. Janie C. Von Schoeler was a patient in the institution from October 10, 1919, until her death March 3, 1920. Shortly after her death, Dr. F. F. Young, father of plaintiffs and the founder of the sanitarium, applied to the court for the appointment as administrator of the succession of the deceased. He alleged that he was a creditor of the estate for the amount claimed in this suit. His appointment was opposed by the surviving husband of Mrs. Von Schoeler. The opposition was sustained, and Victor Von Schoeler was appointed. Dr. Young then filed suit against the succession on the claim. The suit was subsequently voluntarily discontinued. The present suit was filed by his two sons. The petition was directed against the succession of Mrs. Janie C. Von Schoeler, and the prayer was for judgment against that succession, but through error the Christian name of the deceased was given instead of that of the administrator. An amended petition was filed before issue was joined, correcting the error.

[1, 2] We have mentioned these details because of the insistent complaint of defendant's counsel that the error was one not curable by amendment, and for the further contention that Dr. Young, and not the

plaintiffs, was the real owner of the claim sued on. The error in the original petition was merely clerical and was the proper subject of amendment especially before issue was joined. The nature and substance of the demand was not altered, nor did the amendment substitute a new party defendant. The evidence clearly establishes the ownership of the sanitarium in the plaintiffs, and the debt sued on is due, if due at all, to the plaintiffs. The judicial allegations in the petition of Dr. F. F. Young are not binding on the plaintiffs, and certainly furnish no proof of ownership in Dr. Young as against the plaintiffs.

[3] The demand is for $3,400 and is made up of the following items: For room and board, care, and attention of Mrs. Von Schoeler in the sanitarium from October 10, 1919, to March 3, 1920, $700; for constant medical attention, nursing, and medicines for various diseases named, from May 20, 1919, to March 3, 1920, $2,500; and for amount paid consulting physicians, $200. There is no serious objection to the first and third items of the account. The two items, under the evidence, appear to be reasonable and proper charges. The theory of the opposition to the item of $2,500 is that the charge is exorbitant and disproportionate to the services rendered to, or that were required by, Mrs. Von Schoeler. In other words, that she was not a sufferer from all or any of the numerous maladies for which the plaintiffs claim to have treated her. The testimony of defendant, in the main, is directed to proving that fact. The testimony fails of its purpose. Mrs. Sewell, a sister of the deceased, testified to the physical condition of her sister only from general appearance. She said there was no outward indication of a cancer of the breast, and, so far as she knew, her sister had no organic disease. The last time she saw her sister was in October, just before she entered the sanitarium. Mrs. Phillips,

another sister, had not seen Mrs. Von Schoeler for three years prior to her death. Mr. Phillips, a nephew, saw his aunt at the sanitarium in December before her death. Said she was in bed, but did not appear to be very sick. Hannah Magee, a servant of Mrs. Von Schoeler, waited on her a few months before she entered the sanitarium, bathed and rubbed her, and saw no indication of cancer or other sore on her body. Mrs. Poole, who resides near the sanitarium, had known deceased for 28 years, and testified that she was always of a nervous temperament and drank a great deal. Ernest Levy, a negro porter at the sanitarium testified that Mrs. Von Schoeler was up nearly every day around the sanitarium, but at times was confined to her bed. Dr. Maylie was assistant house physician at the sanitarium in 1915, and testified that the customary charges of the sanitarium were $150 to $250 per month of four weeks, for narcotics, and that such charges included everything the patient needed, rooms, board, medicines, medical attention, and nurse. He was only slightly acquainted with Mrs. Von Schoeler and knew nothing of her condition, except that she was under the influence of liquor on one occasion at his hotel. He said that Mrs. Von Schoeler's case would not come under the ordinary run of patients at the sanitarium. Dr. Rucker, who has charge of a sanitarium in Memphis, testified that Mrs. Von Schoeler was a patient there from February to October of 1918; that he made frequent examinations and diagnoses of her case; and that, when she left his sanitarium, she had no organic trouble. Dr. Counce, also of Memphis, corroborated the testimony of Dr. Rucker. The foregoing is substantially a fair synopsis of the defendant's testimony.

Testimony on the part of plaintiffs: Dr. Billings, who was the resident physician at the sanitarium during the time Mrs. Von

Schoeler was a patient, but had severed his connection with the institution, testified that the charges were fair, just, and proper; that she was a very exacting and troublesome patient. Dr. Landry, a physician and surgeon, residing in this city was called in consultation just prior to the death of Mrs. Von Schoeler. He testified that her condition was so critical no detailed examination was made: that she had a mass in her breast, but he could not say that it was a cancer; that she was slightly emaciated and appeared to have been sick for some time. She died two hours after his arrival. Dr. Landry further testified that the diagnosis made by Dr. Young and other attending physicians and the treatment administered, in his opinion, was correct, and that the charges, based on the information received from the Doctors Young, were reasonable. Dr. Durel, also a resident of this city, and who makes a specialty of lung diseases, was called to see Mrs. Von Schoeler in the last stages of her illness. He found her in an emaciated condition, a woman who evidently had been going through a high mental strain of long duration; there seemed to him to be a permanent edema of the lungs, an accumulation of blood serum in the lungs; that the immediate cause of death was purulent inflammation of the heart, drowning on the accumulation of the blood serum of the lungs. He further testified that all medical societies and associations have adopted a plan, that has been found to be the best, to charge the individual according to his income; that this plan is fair to the individual and fair to the physician; that specialists ordinarily charge larger fees than a general practitioner; that from his information of the condition of Mrs. Von Schoeler and the care and attention given her he thought the charge reasonable and not excessive. Dr. F. F. Young testified that Mrs. Von Schoeler was a very sick woman; very temperamental and a hard case to manage; that she was very exacting and required close attention; that he attended her from May 20, 1919, three or four times a day every day or so and possibly one or two calls at night, and that he would have to remain with her for several hours; that she had diseases that caused her condition to be such that it required a great deal of attention to manage her and get any results; that when she came to the sanitarium she was more exacting, more trying, and that she grew worse; that she was in bed three-fourths of the time, and that she was a chronic invalid; that she had cirrhosis of the liver and other diseases as well as what is known as anxiety neurosis; that she died of edema of the lungs and dilatation of the heart and contributing causes. Dr. Young is corroborated in all material details by the testimony of his two sons, the plaintiffs. There are no witnesses who testified in the case who were in better situation to know the condition of Mrs. Von Schoeler and the nature and character of the services rendered and attention given to her during her long illness than were the plaintiffs and their father. The district judge did not discredit their evidence, nor can this court do so. It is agreed by all that Mrs. Von Schoeler was a sufferer for years with extreme nervousness—anxiety neurosis. She was unfortunately addicted to strong drink, and it is an established fact that for twenty months of the last two years of her life she was in a sanitarium for treatment.

[4, 5] Law and jurisprudence have not laid down any hard and fast rule for guidance in the matter of physicians' charges. Courts must of necessity, to a very great extent, rely on the opinions of reputable members of the profession as to the value and character of the services rendered. And such charges are not to be determined wholly upon the skill of the physician, nor upon the amount

of services rendered, but the value of the patient's estate and his ability to pay may be taken into consideration. Czarnowski v. Zeyer, 35 La. Ann. 796; Succession of Haley, 50 La. Ann. 840, 24 South. 285.

In Succession of Levitan, 143 La. 1027, 79 South. 829, 3 A. L. R. 1646, the court said that it was common information that physicians and surgeons do not regulate their charges by any fixed standard of pecuniary value, but, to a certain extent, base them on the ability of the patient to pay. The property of the succession of Mrs. Von Schoeler is inventoried at about $40,000. It is worth much more than that sum. In view of all of the testimony, we are not prepared to say that the charges made by the plaintiffs are unreasonable or excessive.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be affirmed, at appellant's cost.