**FIRST NAT. BANK OF BEAUMONT v. POWELL et al.**

No. 2606.

Court of Civil Appeals of Texas. Beaumont. Dec. 6, 1934.

Rehearing Denied Dec. 12, 1934.

Smith, Smith & Boyd, of Beaumont, for appellant.

Morris & Bennett, of Beaumont, for appellees.

O'QUINN, Justice.

Appellees, Dr. L. C. Powell and Dr. B. F. Roche, brought this suit in the Fifty-Eighth district court of Jefferson county to recover, of appellant, the First National Bank of Beaumont, Tex., as independent executor of the will of E. D. Clem, deceased, the sum of $2,500 alleged to be the reasonable value of surgical and medical services rendered by appellees to said decedent. Appellees alleged that the services by them rendered to deceased were at his special instance and request; that the amount to be charged by them and to be paid by deceased was not agreed upon, but that the reasonable value of their said services was $2,500; that said services rendered deceased were made and done for the purpose of alleviating the suffering, effecting a cure, and prolonging the life of said Clem, and were reasonably worth the sum of $2,500; that said Clem, deceased, was engaged in extensive business operations, had extensive holdings of both real and personal property in Jefferson county, Tex., and elsewhere, and was reputed to be worth from several hundred thousand dollars to a million dollars. They further alleged that their said claim had been presented to deceased's estate and had been rejected, and that "said sum of twenty five hundred dollars is a reasonable, usual and customary charge at Beaumont, Texas, for the services rendered to said Clem by the plaintiffs as above set forth," and prayed for judgment.

The defendant, appellant, answered by general and special exceptions, general denial, and special pleas that the amount attempted to be collected by appellees was unjust, exorbitant, and unreasonable, and that all that could be fairly and legitimately charged by appellees for their services, even if deceased's health had been restored and his life preserved and prolonged, was $250, which amount appellant tendered.

All of appellant's exceptions to appellees' petition were overruled, and the case submit-

ted to a jury upon one special issue, which reads:

"What amount of money, if paid now, do you find from a preponderance of the evidence to be the reasonable value of the services of the plaintiffs to E. D. Clem during his last illness?"

The jury answered "$2,000.00," and upon this finding judgment was rendered accordingly. The case is before us on appeal by the executor.

The pleadings show that the services rendered deceased by appellees were at his special instance and request, and that no agreement was had as to the price to be charged for their services. The suit is for the reasonable value of their services, and so is a suit upon an implied contract.

Appellant presents twenty-four propositions based upon sixty-one assignments of error. It also presents four propositions suggesting fundamental error. We shall not discuss all of these assignments or propositions, but only those we deem necessary to a disposition of the case.

■ The first, second, and third propositions assert that the court erred in not sustaining appellant's special exceptions to those portions of appellees' first amended original petition alleging the reputed wealth of deceased Clem, and his ability to pay. The fourth, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh propositions challenge the correctness of the court's ruling that evidence of the deceased's wealth and ability to pay was admissible. The twelfth, thirteenth, fourteenth, and fifteenth propositions complain that the court erred in refusing to give to the jury its requested charges (Nos. 1 and 2) to the effect that in arriving at what would be a reasonable charge for appellees' services to deceased, they should not consider, for any purpose, the wealth of the deceased, nor the extent of his business operations. As these propositions point to the same thing, the inadmissibility of evidence of the wealth of deceased, we shall consider them together.

By special exceptions to certain averments in appellees' petition, by objection to the introduction of testimony, and by requested instructions, appellant urged that the wealth of E. D. Clem, the deceased, could not be properly considered by the jury in determining the reasonable value of the medical and surgical services rendered him by appellees. The trial court permitted appellees to plead and prove Clem's wealth, and refused to instruct the jury to disregard the proof. The

correctness of the court's action in so doing is the decisive question here. Under the authority of Caulk v. Anderson, 120 Tex. 253, 37 S.W.(2d) 1008, we think the action of the trial court must be sustained.

The authorities are divided on the question as to whether the financial condition of the person receiving the services of a physician, at whose request they are rendered, or the value of the estate of such person, may be considered in determining the reasonableness of the physician's charge, some cases holding that these elements may be considered and evidence received as to them, while others hold to the contrary. Appellant cites us, among others, to the cases of Swift v. Kelly, 63 Tex. Civ. App. 270, 133 S. W. 901, and Robinson v. Campbell, 47 Iowa, 625, as announcing the correct rule, and sustaining its contention that evidence of the patient's wealth and ability to pay are not admissible. Robinson v. Campbell, supra, is regarded as one of the leading cases in that line of decisions. It was an early case (1878) and has been frequently cited and followed by other jurisdictions. Swift v. Kelly, supra, was a Texas case, decided by the Fort Worth Court of Civil Appeals. It follows Robinson v. Campbell, and supports appellant's contention. But the identical question was' before the Supreme Court of Texas in the case of Caulk v. Anderson, 120 Tex. 253, 37 S.W.(2d) 1008, 1009, and the holding in Swift v. Kelly was expressly overruled. In that case Judge Greenwood says:

"We cannot accept the contention that this question can be rightly determined by regarding the physician's and surgeon's professional services as involving no elements differing from a merchant selling a yard of cloth or a laborer digging a ditch. Such a view disregards the essential purpose of the employment of the physician or surgeon, which is to relieve the pain, restore the health, avert the death, and prolong the life of a human being. Since a cardinal object of the employment is to prolong the life and restore the health of a human being, any evidence bearing on the pecuniary value of such life and health cannot be logically ignored in the search for the truth as to reasonable compensation for the services rendered under the employment."

Again, he says:

"Had the patient Brackenridge suffered permanent injury or lost his life as the proximate result of negligence in the performance of plaintiff in error's services as physician or surgeon, no one could question that

he, or a dependent relative, might have proven his wealth and business capacity, under the established law in Texas, in an action to recover the damages for which plaintiff in error would have been liable. Such testimony would be admissible because it would help to arrive at the pecuniary value of the patient's health and life. For the same reason testimony of a patient's wealth is admissible as a circumstance to determine the value of services resulting in his restoration to health and capacity to perform his customary duties, as well as the prolongation of his life."

And:

"The Secretary of the Interior of the United States, in reviewing a report, soon to be available, of a Committee on Costs of Medical Care, sponsored by the greatest American foundations, states that in this country there is a 'sliding scale for the costs of the same medical service, which may vary from $25 to $10,000, according to the wealth of the individual.' Hence, patient and physician must concur in regarding the patient's ability to pay as a matter to be properly taken into consideration in fixing, by express contract, fair medical fees. That which parties quite universally regard as important or even controlling in fixing the value of a certain service by express agreement ought not to be required to be wholly ignored in a conscientious effort to arrive at the reasonable value of the same service when that value has not been agreed upon."

After citing and quoting from decisions from several states, Judge Greenwood says, "Our conclusion is that the Court of Civil Appeals erred in reversing the judgment of the district court because plaintiff in error was permitted to plead and prove Geo. W. Brackenridge's wealth," thus overruling Swift v. Kelly, and establishing the rule in Texas that a patient's wealth may be considered by the jury as a circumstance in determining the value of medical and surgical services rendered the patient. The Texas doctrine thus announced accords with Pfeiffer v. Dyer, 295 Pa. 311, 145 A. 284; Schoenberg v. Rose (Mun. Ct.) 145 N. Y. S. 831; Young Bros. v. Succession of Von Schoeler, 151 La. 73, 91 So. 551; Succession of Levitan, 143 La. 1025, 79 So. 829, 3 A. L. R. 1646; Houda v. McDonald, 159 Wash. 561, 294 P. 249 (1930). 33 Tex. Jur., p. 364, § 81, states the rule as above held.

■ But appellant insists that in the Brackenridge Case [Caulk v. Anderson] supra, the patient was benefited, his life prolonged, and death averted, by the services rendered, while in the instant case none of these things was accomplished, but the patient died, and so the rule there stated could not have application in the instant case. We overrule this contention. The purpose of the services was to accomplish a benefit to the patient—to prolong his life and, if possible, to avert his death. We think the rule well settled that in the absence of a contract to that effect the right of a physician or surgeon to recover the reasonable value of services rendered does not depend upon the success or failure of the treatment or operation. In the absence of such a contract, the rule of "no cure no pay" has no application. The result of the treatment; when properly given, or the operation, when skillfully performed, lies so generally with the forces of nature that all intelligent men know and understand that the surgeon is not responsible. In the absence of express agreement, the surgeon who brings to such service due skill and care, earns the reasonable and customary price therefor, whether the outcome be beneficial to the patient or the reverse. Ladd v. Witte, 116 Wis. 35, 92 N. W. 365; Styles v. Tyler, 64 Conn. 432, 30 A. 165; 48 C. J., p. 1160, § 175 (and authorities cited in note 87). There is no contention here that the treatment given Clem, or the operation performed on him by appellees, was negligently performed, but it is candidly admitted that the appellees are and were well qualified and that the services were skillfully rendered. The record discloses that Clem was in a very serious physical condition suffering from acute and malignant appendicitis trouble when appellees were called by him to attend him, and that the operation had to be hastened and was skillfully performed and constant attention given the patient right up to his death seven days later. One of appellees at the request of Clem took a room at the hospital near that of Clem's and stayed there day and night so as to at any minute be on hand to give attention to the patient. No complaint of the character of service rendered is made, nor is there any attempt to show that any different service or treatment would have been more beneficial to Clem or have alleviated his condition. Several eminent physicians and surgeons were called in consultation, and apparently everything humanly possible was done to save his life.

■ There is no merit in the contention presented by the sixteenth and seventeenth propositions that the court erred in excluding evidence relating to what is termed the "average low level and high level" of surgical fees

charged in the city of Beaumont and vicinity. It was not proposed to prove that there was a medical association composed of physicians and surgeons of Beaumont, nor that such association had an agreed or fixed schedule of fees to be charged for surgical operations of any kind either average low level or high level. What might be the opinion of any one or more of the physicians and surgeons of Beaumont as to what fees were proper to be charged in an "average low level, or high level" case was not proper to determine what was the reasonable value of surgical services, such charges not being controlled or rendered under a classification fixed by the medical association of said location. Furthermore, what would constitute a case warranting an "average low level" charge or one of a "high level" charge would doubtless vary largely according to the opinion of the several practitioners, based upon varying elements, and so would not present a safe or controlling guide in arriving at the proper charge.

■ We overrule appellant's eighteenth, nineteenth, twentieth, and twenty-first propositions relating to the court's excluding evidence of the amounts charged by different physicians in Beaumont for appendicitis operations. We do not believe that the determination of what would be the reasonable value of services of one surgeon rendered to a patient in an appendicitis operation and after treatment could justly be ascertained by basing the charge upon the amount different physicians had theretofore charged in such cases all varying in degrees of seriousness, complications, and advanced stage of lessened chances of recovery. We know of no case where it has been so held, and we are of the opinion such evidence was not proper.

The assignment asserting error in the court's failure to sustain appellant's objection to the hypothetical question propounded by appellees to several medical witnesses is overruled. We think the question was proper.

All assignments complaining of the court's failure to sustain appellant's exception to the court's charge are overruled. In our opinion there was only one question of fact to be submitted to the jury, and that was what was the reasonable value of the services rendered deceased by appellees, and this was properly submitted in special issue No. 1.

■ Appellant's last four propositions suggest that the failure of the court to embrace certain instructions in his charge was funda-

mental error. These assignments are overruled. Under article 2185, R. S. 1925, objections to the court's charge not having been made in the court below were waived. Furthermore, the charge as given not being fundamentally erroneous, alleged erroneous omissions therefrom cannot be presented on appeal as constituting fundamental error. In other words, not being fundamentally erroneous, a charge is reversible only when its omissions are specifically pointed out by proper exception. City of Beaumont v. Dougherty (Tex. Civ. App.) 298 S. W. 631, 637.

No error appearing, the judgment is affirmed.