126 So.2d 423 (1960)
Bennie E. SPENCER, Plaintiff-Appellee,
v.
L. Allen WEST, Defendant-Appellant.
No. 9370.
Court of Appeal of Louisiana, Second Circuit.
December 19, 1960.
Rehearing Denied February 2, 1961.
Certiorari Denied March 13, 1961.
*425 Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellant.
McHenry, Snellings, Breard & Sartor, Monroe, for appellee.
GLADNEY, Judge.
This suit was filed on July 25, 1957, by Dr. Bennie E. Spencer to recover for professional services rendered the defendant, L. Allen West, during a period commencing December 20, 1955, and terminating March 2, 1956. Dr. Spencer died before the trial was completed and his widow, Marthield Knight Spencer, administratrix of his succession, was substituted as party plaintiff. The action is defended on the ground the charges sought to be collected are excessive. Further, respondent avers that during the course of his treatment he was administered an over-dosage of dicumerol, a blood thinning drug, and as a result suffered hemorrhages and other consequences for which damages are sought in reconvention. Alternatively, defendant pleads that should he not be permitted to recover damages he is nonetheless entitled to an offset or compensation against plaintiff's charges by reason of the unskillful care exercised by Dr. Spencer, and for pain, suffering, and inconvenience thereby sustained. Plaintiff filed a plea of prescription directed to the reconventional demand and an exception of no cause and no right of action against defendant's claim for compensation and offset. The trial judge sustained these pleas in limine and, following trial on the merits, rendered judgment for the amount of the principal demand. Defendant has appealed, assigning several errors to the trial court, which, in substance, are: failure to hold appellant's demand in reconvention is ex contractu rather than ex delicto, and failure to accept and consider as established certain evidence offered by defendant for the purpose of showing the professional charges involved herein were improper and unreasonable.
The existence of consensual relationships between physicians and their patients with certain obligations and duties incumbent upon the respective parties is described in 70 C.J.S. Physicians and Surgeons, § 36, at p. 941. Louisiana courts have uniformly held that where a contract has been breached by negligent or tortious conduct the injured party may bring his action ex contractu or ex delicto. Exhaustive discussions of this rule appear in Loew's, Inc. v. Don George, Inc., 1959, 237 La. 132, 110 So.2d 553; Olinde Hardware & Supply Company v. Ramsey, La.App. 1st Cir., 1957, 98 So.2d 835; Transportation Equipment Company v. Younger Bros., La. App. Orl., 1948, 34 So.2d 347; American Heating & Plumbing Company, Inc., v. West End Country Club, 1930, 171 La. 482, 131 So. 466. The last three cited cases involved reconventional demands in contract, although injuries complained of resulted from negligent or tortious conduct, and in each case it was held that the prescription required to bar the demands was the prescription of ten years. In determining whether the action is one in tort or contract the courts have relied upon the character which the plaintiff gives to his pleadings and the form of his action. Importsales Inc. v. Lindeman, 1957, 231 La. 663, 92 So. 2d 574; Kramer v. Freeman, 1941, 198 La. 244, 3 So.2d 609. The plea of prescription filed in behalf of plaintiff should have been overruled.
*426 Defendant's plea of compensation or offset, predicated upon the alleged act of malpractice in administering an overdose of dicumerol, cannot be considered by the court for it constitutes an unliquidated claim for damages which is urged as an offset to a liquidated claim on a professional account. LSA-C.C. arts. 2207, 2209. City of Shreveport v. Curcio, La.App. 2d Cir., 1934, 157 So. 317; Calvert Fire Insurance Company v. Lewis, 1957, 231 La. 859, 93 So.2d 194. The ruling of the lower court on the exception of no cause and no right of action was proper.
The circumstances giving rise to this litigation commenced with a heart attack suffered by the defendant in Monroe about noon on December 20, 1955. Drs. Schonlau and Raphael went immediately to West, rendered emergency treatment, and accompanied him to the hospital where the patient was placed under an oxygen tent, administered drugs, and an EKG taken. When notified of West's condition Dr. Spencer was in the Palace Department Store, approximately two blocks from the St. Francis Hospital, where defendant was taken. Prior to arriving at the hospital some thirty or forty minutes after notification, Dr. Spencer telephoned the hospital and gave instructions as to medication. Upon arriving at the patient's bedside, Dr. Spencer made an examination, checking the pulse, blood pressure, etc., and was with the patient for two to two and one-half hours. West continued under the treatment of Dr. Raphael, a heart specialist, until the critical stage was passed. Dr. Schonlau also attended defendant for a time, but due to personal differences with Dr. Spencer, he discontinued his services. Appellant remained in the hospital until December 28th, at which time he was permitted to go home where he received almost daily professional attention from Dr. Spencer until February 18th. From February 18th to March 3rd there were no professional visits. On March 3rd West, who had been taking doses of dicumerol pursuant to Dr. Spencer's orders, suffered a reaction which required hospitalization for correction of the condition. This treatment lasted until March 22, 1956.
An action to recover for medical services rendered is, of course, predicated upon the obligation of the patient to pay, and arises ex contractu. The relationship between the physician and patient may result from an express or implied contract, either general or special, and the rights and liabilities of the parties thereto are governed by the general law of contract. Where the terms of the contract, especially as to consideration, have not been predetermined, an agreement therefor will be implied and the doctor is entitled to recover for his services in the same manner as any other person who performs services for another. The general rule as stated in 70 C.J.S. Physicians and Surgeons § 71, at p. 1032, is that the fee usually charged by other practitioners of similar standing for similar services is a factor for consideration in determining a reasonable compensation of a physician. There are a number of other factors which, in the absence of a specific understanding, must be measured by reasonableness. These are founded on custom, the nature of the case, the amount of attention given, professional standing and skill, the end result obtained, the financial condition of the patient, and anything else which tends to increase the burden of the services performed by the physician. 70 C.J. S., supra, at pp. 1032, 1033 and 1034.
In considering the determinative factors in a direct charge, the following comments from decisions of our appellate courts are pertinent:
"Law and jurisprudence have not laid down any hard and fast rule for guidance in the matter of physicians' charges. Courts must of necessity, to a very great extent, rely on the opinions of reputable members of the profession as to the value and character of the services rendered. Any such charges are not to be determined wholly upon the skill of the physician, nor upon the amount of services rendered, *427 but the value of the patient's estate and his ability to pay may be taken into consideration." Young Bros. v. Succession of Von Schoeler, 1922, 151 La. 73, 91 So. 551, 553.
"In determining what is a correct charge for professional services, there should be considered two things: first, the training and experience necessary and the seriousness of the treatment or operation; and, second, the ability of the defendant to pay. We do not mean that because a defendant may be a very rich man he may be required to pay an exorbitant charge, but we do mean that, where a defendant is shown to be well able to pay, the doctor should not be required to reduce his charge, and in fixing it, may take into consideration the fact that the patient has ample funds out of which to make the payment." Womack v. Burka, La. App. Orl., 1943, 14 So.2d 302, 304.
By way of comparison between our jurisprudence and that of other states generally, Louisiana appears to follow the minority rule with reference to financial worth or the ability to pay as an element to be considered in determining the reasonableness of the personal charge. 3 A.L.R. 1648 et seq. The position of the courts adhering to the majority rule is thus stated in Robinson v. Campbell, 1878, 47 Iowa 625, where it was contended the affluence and pecuniary condition of the defendants justified the amount of the charge, the court held that the evidence was improper, and that the circumstances of the defendants did not constitute an element in fixing the services, saying:
"There is no more reason why this charge should be enhanced on account of the ability of the defendants to pay than that the merchant should charge them more for a yard of cloth, or the druggist for filling a prescription, or a laborer for a day's work. It is true a physician in general practice will often be called upon to treat indigent persons from whom he will not be able to recover the value of his services. He may take this into account and regulate his charges with reference to that fact, just as a merchant may take into account probable bad debts in fixing his per centum of profit upon his goods. But the value of a service depends upon the difficulty of rendering it, and the skill required in its performance, and, sometimes, upon the results accomplished, and not upon the riches or the poverty of the person for whom the service is performed. If the ability to pay determines the reasonableness of a charge, then the richer a man is the more he should pay for any service. No such rule of charge can be recognized or countenanced by the law."
The courts of this state have uniformly considered the financial ability of the patient to pay. See Succession of Levitan, 1918, 143 La. 1025, 79 So. 829, 3 A.L.R. 1646; Succession of Munch, 1928, 167 La. 48, 118 So. 688; Reine v. Reine, 1930, 170 La. 839, 129 So. 364; and Womack v. Burka, 1944, 206 La. 251, 19 So.2d 127.
Counsel for plaintiff quotes from and relies upon Wadlington v. Barron, La.App. 2d Cir., 1956, 91 So.2d 448, contending that this court therein held a doctor is entitled to charge whatever he wishes for the administration of drugs and medicines without limit as to the percentage of profit. What the court said is set forth below and appears to be self-explanatory:
"The balance of the account is comprised of charges for medications of various kinds and nature. It is earnestly argued by distinguished counsel for defendant that plaintiff's own testimony on cross-examination discloses that the charges for much of these medicines indicates an unjustifiable margin between the cost to plaintiff and the charge to his patient. This fact is obvious, and it would appear that the margin indicates a charge, *428 over cost, of several hundred percent, in most instances, and, perhaps, a thousand or more percent in others. On the face of such a showing we concede that such charges appear exorbitant and unreasonable to the layman. However, while our laws prohibit usury and provide penalties therefor with respect to the lending of monies, we are aware of no statutes which limit or restrict the percentage of profit in instances of this kind. Again we point out that defendant has failed to prove that these charges exceed the established and customary limits as measured by the custom of other hospitals or clinics. The only testimony on this point is found in the examination of Dr. Cannon, who asserted that the charges appeared to be in line with those of another sanitarium.
"In the absence of more convincing proof, we can only conclude that charges for medicines administered for the relief of pain and for the cure of bodily diseases and infirmities are matters that address themselves to the conscience of those who engage in such a business." Id., at page 451. (Emphasis supplied.)
The case is inapposite to the matter before us.
In the absence of a definite agreement as to what charges are to enter into the contract the doctor may decide upon and fix his charges, which must be reasonable. Our courts have never hesitated to reduce such charges where the proof disclosed they were unreasonable and excessive. In this case the principal defense is that the charges sought to be collected are unreasonable and excessive.
As a practical matter the reasonableness of a professional charge must be viewed in light of charges usually made for such services by men of similar professional standing, and under similar circumstances. In this instance three physicians of excellent standing in the community and who are members of a Grievance Committee of the Ouachita Parish Medical Association have given in open court their testimony as to the charges herein sued upon. Their opinions reflect that such charges were excessive, and suggested the sum of $565 as reasonable for such services as were rendered. These professional men had before them the record in this case which disclosed the circumstances, portrayed by the testimony of plaintiff himself, under which the charges were made. It is true that counsel for appellee seriously urges that the testimony of these doctors should not be considered for the reason that they were under the mistaken belief that the evidence was requested by the court. This does not, however, affect the weight of their testimony.
The claim for professional services, which appellant asserts is excessive, is for $1,939. The record discloses a charge of $25 was made for each day the patient was visited in the hospital, and a like sum was assessed for each day of professional attention at defendant's home or at the doctor's office, except on days when gamma globulin or glucose and terramycin was administered, when a $100 entry was made for the treatment with gamma globulin and a $50 entry for treatment with glucose and terramycin. For his visitation to West on December 20, 1955, the doctor made a charge of $225.
When compared with charges for similar services in Monroe, appellee contends these charges are proper and reasonable because of (1) the special skill of the doctor; (2) the distance of the doctor's office and residence, 12 miles, from Monroe, where principally the services were rendered; (3) the fact that the patient was demanding; and (4) the pecuniary condition or wealth of appellant. Of these, the evidence does not establish contentions (1), (2) and (3). Nor can the charges so made be justified solely on the ground plaintiff was in good financial condition. The evidence disclosed West, at *429 the time of and subsequent to the rendition of the services, enjoyed a net income of from Twenty-Five to Thirty Thousand Dollars or more per year. Yet, Dr. Spencer's professional charges, as entered on his books, a few years prior to December, 1955, were in line with customary charges of the medical profession of Monroe for similar services. One physician testified he thought Dr. Spencer's bill was not excessive. Three others gave their opinion the charges were excessive, testifying that a charge of from $7 to $10 per house call was proper, that hospital visits should range from $6 to $10, and that $8 per day in this instance would be considered reasonable. The testimony further discloses a normal dosage of gamma globulin costs about $15 and terramycin and glucose about $4. It is also noteworthy that while defendant was in the Monroe hospital from December 20th through December 28th, he was regularly treated by Dr. Raphael, a heart specialist. We observe the latter rendered a bill of $130, whereas Dr. Spencer's bill for the same period of treatment was $425. The evidence, we find, clearly supports defendant's contention the charges are excessive. We do not attempt to adjust each item or separate charge on the bill for we know well that professional charges are subject to variation and cannot be exactly standardized, or as counsel so aptly puts it, "professional services for law and medicine are fortunately still not sold in the market place like shoes or potatoes." It should be observed, however, that should professional fees continue to increase and become a burden to the public, governmental regulation will be urged as a correction, even though many consider socialized medicine detrimental to our system of free enterprise.
It is, however, the duty of the courts, in the absence of special agreement, to determine whether the charges sued upon are unreasonable or excessive, and if so, make a proper reduction after giving consideration and weight to all factors rendering the services more onerous, and justifying an increase over the usual and customary charges. It is our opinion a total charge of $650 is proper and the judgment will be so amended.
The record indicates no formal judgments were signed sustaining the plea of prescription and the exception of no cause or right of action. It is the holding of this court the plea of prescription should be and is hereby overruled. The ruling sustaining the exception of no cause and no right of action directed to defendant's plea of compensation and offset was correct and is affirmed. The judgment in favor of plaintiff on the principal demand is amended by reducing the award to $650, and, as so amended, is affirmed.
The case is remanded for trial of the reconventional demand consistent with this opinion, and in accordance with law. Costs incurred thereby shall be assessed in accordance with the judgment rendered thereon. Costs of the appeal are taxed against appellee.